PHEBE J. HOWARD, Respondent, *v.* AUGUSTIN DALY, Appellant.

Where a contract for future employment and service has been entered into, and upon the arrival of the time specified for the commencement of the service, the employe being ready and willing to perform, the employer absolutely repudiates the contract, this is equivalent to a refusal to allow the employe to enter upon the service, and is a breach of the contract.

It is not necessary for the employe thereafter to tender his services or to keep himself in readiness to perform. His only further duty is to use reasonable care and diligence in entering into other employment of the same kind, and thus to reduce the damages.

The remedy of the employe is not an action for wages, but to recover damages for the breach

*Gandell* v. *Pontigny* (4 Camp., 375); *Thompson* v. *Wood* (1 Hilt., 96); *Fowler* v. *Armour* (24 Ala., 194); *Armfield* v. *Nash* (31 Miss., 361); *Gordon* v. *Brewster* (7 Wis., 355); *Booge* v. *P. R. R. Co.* (33 Mo., 212) disapproved.

The damages in such action are *prima facie* the amount of the wages for the full term.

*It seems*, that it is not necessary for plaintiff to show, affirmatively, that an employment was sought for by him and could not be obtained; but the burden of proof is upon defendant to show, in mitigation of damages, that plaintiff found employment elsewhere, or that other similar employment was offered and declined, or, at least, that it might have been found with reasonable diligence.

*It seems*, that where the contract is repudiated by the employer prior to the time for entering into the service that the employe has an immediate cause of action, and it is not necessary to aver a readiness to perform at the specified time. It is at the option of the employe either to treat the contract as thus broken, or as still subsisting; in the latter case he may offer to perform on the day specified for the commencement of the service. The rule of damages in either case is the same. (DWIGHT, C.)

Defendant sent to plaintiff an offer for a theatrical engagement, on her part, in the form of a contract executed by him, with a duplicate which he requested her, if she accepted, to sign and return. Plaintiff signed and deposited the duplicate in defendant's letter-box at his theater, which, as defendant conceded, was sometimes used for such purpose. In an action for a breach, *held*, that the execution of the contract was complete, although the duplicate never reached the defendant; also, that there was a presumption that it reached defendant, which, in spite of his denial of its receipt, raised a question of fact, the decision whereof could not be reviewed here.

(Argued September 15, 1874; decided January term, 1875.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of plaintiff entered on the report of a referee.

This action was brought upon an alleged contract for employment and service.

The complaint set forth, in substance, that, on the 20th day of April, 1870, the plaintiff contracted with the defendant to act at the Fifth Avenue theater, in the city of New York, or at such other places as he might require, in such capacity and in such a way and manner as he might direct, and under such rules as he might establish for the coming season, to commence on or about September 15, 1870, and terminate on or about July 1, 1871, at a salary of ten dollars per week during the season, and the plaintiff agreed with the defendant so to do and act during the time aforesaid. That, about the beginning of the season, and some weeks before the theater was opened, the plaintiff reported for rehearsals, but was not assigned any part, or allowed to take part in the performances, as was agreed by the defendant, although she was then ready and willing to do so; and she was prevented by the defendant and his servants from acting and fulfilling her part of the contract, although she was then, and has ever since been, willing and anxious to do so. There was a further allegation that no part of the salary of ten dollars, as agreed upon, had ever been paid. The plaintiff then demanded judgment for the whole amount stipulated to be paid.

The answer contained a general denial of the allegations of the complaint.

The referee found, in substance, that the contract set forth in the complaint was entered into between the plaintiff and the defendant; that the plaintiff offered and tendered performance of her part of the contract, but that the defendant repudiated the contract, and thereby prevented the plaintiff from performing her part of the same; and that no part of her salary had been paid to the plaintiff.

He further found that a paper, embodying the terms of

the contract, was signed by the defendant, and inclosed by him to the plaintiff, together with another, which was a duplicate of the one signed, as an offer or proposal·for a contract. The acceptance of such offer was, by its terms, to be signified by the plaintiff by signing one of said papers and returning the same, so signed, to the defendant; that the plaintiff signed such duplicate and returned it to the defendant.

The referee found, as matter of law, that the plaintiff was entitled to judgment against the defendant for the sum of $410 damages. Judgment was entered accordingly.

Further facts appear in the opinion.

*Richard M. Henry* for the appellant. No proper tender of services was made by plaintiff. (*Frey* v. *Johnson*, 22 How., 316; *Ficket* v. *Brice*, id., 194; *Roosevelt* v. *Bull's Head Bk.*, 45 Barb., 579; *Strong* v. *Blake*, 46 id., 227; *Polk* v. *Daly*, 14 Abb. [N. S.], 156; *Crist* v. *Armour*, 34 Barb., 378.)

*Spencer L. Hillier* ·for the respondent. The facts found by the referee, being fully sustained by the evidence, are not subject to review. (Code, §§ 267, 272; *Fellows* v. *Northrup*, 39 N. Y., 119; *Reed* v. *Bd. Ed. of Bklyn.*, 3 Keyes, 105; *Monell* v. *Marshall*, 25 How. Pr., 425; 1 E. D. S., 85; 3 id., 98; 4 id., 365; 3 Cow., 168; 5 Duer, 216; 7 Bosw., 394; 20 How. Pr., 70; 35 Barb., 602; 16 id., 146; 24 How. Pr., 324; 2 Hill, 576; 3 N. Y., 168, 502; 1 Barb., 502; 5 id., 469; 10 N. Y., 93.) The signing of the duplicate contract and placing it in ·the letter-box of the theater completed the contract between plaintiff and defendant. (Story on Con., § 84; *Trevor* v. *Wood*, 36 N. Y., 307; *Vassar* v. *Camp*, 11 id., 441; 17 id., 424; 36 id., 309; 5 Barr, 339; 12 Conn., 424; 6 N. Y. L. Obs., 262, 271; 1 Bosw., 1; *Maciter* v. *Frith*, 6 Wend., 103; 1 Pick., 272; 4 Bing., 653; 4 Wheat., 225; *Myers* v. *Smith*, 48 Barb., 614.) Plaintiff's direct affirmative testimony outweighs defendant's negative testimony and want of recollection.

(*Woodcock* .v. *Bennett*, 1 Cow., 711; *Johnson* v. *Scribner*, 6 Conn., 185; *Malen* v. *Malen*, 1 Wend., 623, 657; *Fowler* v. *Loomis*, 12 id., 27; 1 Phil. on Ev. [C. & H. Notes], 598, notes.) Plaintiff made all the tender of performance that was necessary. (*Cross* v. *Beard*, 26 N. Y., 85; *Crist* v. *Armour*, 34 Barb., 378; *Skinner* v. *Tinker*, id., 333; 7 Cow., 371; 16 Mass., 161; 13 E. C. L., 181; 55 id., 371; 4 Pick., 275; 24 Conn., 624.)

DWIGHT, C. It is insisted, by the defendant, that the complaint in this cause should have been dismissed, on the ground that the plaintiff made and maintained no proper tender of service. The finding of the referee that the plaintiff offered and tendered performance of her part of the contract, but that the defendant repudiated the contract, and thereby prevented the plaintiff from performing her part of it, is said to be unsustained by the evidence, and to be erroneous.

As this is substantially the whole question raised by the defendant on this appeal, it will be the most convenient way to discuss it, to consider the effect of the acts of the defendant denying the existence of the contract. The fact that there was a valid contract has been found by the referee. The evidence showed that a proposal, in writing, was made by Mr. Daly to the plaintiff for an engagement of her services for the year 1869. The plaintiff testifies that she signed an acceptance on Saturday, April 13, 1870, and placed it in the letter-box of the defendant, at the theater. The defendant admits that this letter box was sometimes used as a place for deposit of the duplicates of contracts made between him and the actors. It is true that he testified that he never received the papers which the plaintiff asserts that she deposited in the box. This, however, is immaterial. The minds of the parties met when the plaintiff complied with the usual, or even occasional, practice, and left the acceptance in a place of deposit recognized as such by the defendant. This doctrine is analogous to that which has been

adopted in the case of communication by letter or by tele-
graph. ( *Vassar* v. *Camp,* 11 N. Y., 441; *Trevor* v. *Wood,*
36 id., 307.)   The principle governing these cases is, that
there is a concurrence of the minds of the parties upon a
distinct proposition, manifested by an overt act. ( *White* v.
*Corlies,* 46 N. Y., 467.)   The deposit in the box, under the
circumstances of the present case, is such an act.

The case may also be rested upon the fact that there was
evidence to lead to a presumption that the document reached
the defendant, as it was placed in a receptacle considered by
him to be a suitable one for the deposit of documents of this
class.   In the ordinary course of business it would reach the
defendant, as he would be supposed to have competent attend-
ants in charge to transact his business.   His denial that he
received it simply raises a case of conflict of evidence, on which
the referee has passed in the plaintiff's favor.   In *Dana* v.
*Kemble* (19 Pick., 112), it appeared that it was the usage of a
hotel to deposit all letters left at the bar in an urn kept for
that purpose, whence they were sent, almost every fifteen
minutes throughout the day, to the rooms of the different
guests to whom they were directed.   It was held that there
was a presumption that a letter addressed to one of the
guests left at the bar was received by him.   The same point
was ruled, in substance, in *Hetherington* v. *Kemp* (4 Camp.,
192), where a letter was placed on a table where letters were
usually placed to go to the post-office.   The court held that
this would be sufficient if it were proved that they were
usually carried to the post-office.   Though no strict usage
was established in the case at bar, there was enough proved
to show that, in the ordinary course of business, the letter
addressed to him by the plaintiff was likely to reach him.

The evidence bearing upon the referee's finding that the
defendant repudiated the contract thus formed, is, substan-
tially, as follows : At the end of August, or the beginning of
September, 1870, the plaintiff saw the defendant's posters in
the street, with a list of his company.   Not seeing her name
she wrote to the defendant for an explanation, but received

no answer. She then went to the theater, where she met the defendant, and asked him why he had not answered her letter, to which inquiry he replied that he had answered it; that it was lying in the box office of the theater for her, and had not been sent to her, because he expected she would call for it. The defendant then handed her the letter, which bore date August thirty-first, and which stated that he was not aware of making any engagement with the plaintiff for the present season; and that he certainly had no contract with her. After she had read this letter, she said to the defendant that she had his paper of engagement. He seemed quite surprised, and said that he had not got hers, knew nothing about it, and had not engaged her. On her cross-examination, the plaintiff testified that the conversation just detailed occurred the day after the theater opened.

The defendant gives a version of the interview not materially different. He says that, some time after the issue of the preliminary poster, stating the announcement of the season of 1870-71, the plaintiff called on him and wished to know why her name was not on the poster, and he replied because she was not a member of the company.. She then stated that she had signed a contract, and he then called her attention to a notice which he had issued requiring an acceptance by a particular day, and stated that he had not received hers. The treasurer of the defendant (Mr. Appleton), who heard the conversation, says that the plaintiff having asked why her name was not on the poster, the defendant answered it was because she had not complied with the notice put up in his green room; and there not being any contract, he could not announce her as one of the company.

This testimony shows that the defendant unequivocally refused to recognize the contract. After the plaintiff's statement, he positively declined to receive her as one of the company. The evidence is not perfectly distinct on the point whether the plaintiff's duties had commenced at the time when the defendant's denial of the contract was made. This may, perhaps, be inferred from a statement made by her on

cross-examination, that the conversation occurred the day after the theater was opened. As the matter, however, remains in some doubt, the subject will be examined from both points of view.

I. I shall first consider the question on the supposition that the plaintiff's period of service had already arrived, and that, on her application for permission to fulfill her contract, the defendant repudiated his obligations.

No precise form of words was necessary on his part to reject her services; the obligation of the contract being created, a denial of its existence was equivalent to a refusal to allow her to enter upon the service. The defendant's intent is plain. He might reject her services indirectly as well as directly. The sole inquiry is, whether he has done an act *inconsistent* with the supposition that the service continues. In the case of *Short* v. *Stone* (8 Ad. & Ell. [N. S.], 358), it was held that if a man promised to marry a woman on a future day, and before that time married another, he had broken the contract with the first woman. This was on the ground that the act done was inconsistent with the contract relations of the parties. (See, also, *Lovelock* v. *Franklyn*, 8 Ad. & Ell. [N. S.], 371.) I think, accordingly, that the refusal of the defendant to recognize the contract was equivalent to a refusal to continue the plaintiff in his employment.

The next point is, whether the plaintiff was bound, notwithstanding the defendant's act, to keep herself in readiness to perform the contract at all times, or in any form to tender her services. This inquiry involves the correct theory of the nature of the action. Does the plaintiff sue for wages on the hypothesis of a constructive service, or for damages? This question, as far as appears, has never been fully discussed in the appellate courts of this State; and, on account of both its novelty and importance, will be considered at length.

It is very plain, that if a servant has actually performed the service which he has agreed to render under the contract, he has a right to recover *wages*. That would have been true

in the case at bar if the defendant had received her services for the stipulated period. Had he not paid her according to the agreement, her action would have been for the fixed wages. If, on the other hand, she is wrongfully discharged, and the relation of master and servant is broken off as far as he is concerned, it is clear that she cannot recover for wages in the same sense as if she had actually rendered the service. In an early *nisi prius* case the fiction of a " constructive" service was resorted to, and a servant discharged without cause was allowed to recover wages. (*Gandell* v. *Pontigny*, 4 Campb., 375 ; see, also, *Collins* v. *Price*, 4 Bing., 132.) This view has been discarded in later decisions, and has been disapproved by text writers. (*Archard* v. *Hornor*, 3 Car. & Payne, 349; *Smith* v. *Hayward*, 7 Ad. & Ell., 544; *Aspdin* v. *Austin*, 5 id. [N. S.], 671 ; *Fewings* v. *Tisdal*, 1 Exch., 295 ; *Elderton* v. *Emmons*, 6 Com. Bench 178; *Goodman* v. *Pocock*, 15 Ad. & Ell. [N. S.], 582 ; Mr. Smith's notes to *Cutter* v. *Powell*, 2 Smith's Leading Cases, 20 ; C. M. Smith on the Law of Master and Servant, p. 95, note *g ;* *Whitaker* v. *Sandifer*, 1 Duvall [Ky.], 261 ; *Chamberlin* v. *McCallister*, 6 Dana, 352 ; *Clark* v. *Marsiglia*, 1 Den., 317 ; *Durkee* v. *Mott*, 8 Barb., 423 ; *Moody* v. *Leverich*, 4 Daly, 401.)

These cases and authorities hold, in substance, that if a servant be wrongfully discharged, he has no action for *wages*, except for past services rendered, and for sums of money that have become due. As far as any other claim on the contract is concerned, he must sue for the injury he has sustained by his discharge, in not being allowed to serve and earn the wages agreed upon. (Smith on Master and Servant, 96, note *n ;* *Elderton* v. *Emmons*, 6 Com. Bench, 187 ; *Beckham* v. *Drake*, 2 Ho. Lords Cases, 606.) A servant wrongfully discharged has but two remedies growing out of the wrongful act: (1) He may treat the contract of hiring as continuing, though broken by the master, and may recover damages for the breach. (2) He may rescind the contract ; in which case he could sue on a *quantum meruit*, for services actually ren-

dered. These remedies are independent of and additional to his right to sue for *wages*, for sums actually earned and due by the terms of the contract. This last amount he recovers because he has completed, either in full or in a specified part, the stipulations between the parties. The first two remedies pointed out are appropriate to a wrongful discharge.

To apply these principles to the case at bar, the plaintiff must have been ready and willing to continue in the defendant's service at the time of the latter's refusal to receive her into his employment. (2 Wms. Saund., 352 *et seq.*, note to *Peeters* v. *Opie*.) It is not necessary, however, that she should go through the barren form of offering to render the service. (*Wallis* v. *Warren*, 4 Exch., 361; *Levy* v. *Lord Herbert*, 7 Taunt., 314; *Carpenter* v. *Holcomb*, 105 Mass., 284, and cases cited in opinion by COLT, J.) Her readiness, like any other fact, may be shown by all the circumstances of the case. It sufficiently appeared by the conduct of the parties.

After the defendant had declined to give her employment, there was no further duty on the plaintiff's part to be in readiness to perform. If that readiness existed when the time to enter into service commenced, and the defendant committed a default on his part, the contract was broken and she had a complete cause of action. Tender of performance is not necessary when there is a willingness and ability to perform, and actual performance has been prevented or expressly waived by the parties to whom performance is due. (*Franchot* v. *Leach*, 5 Cow., 506; *Cort* v. *Ambergate and R. R. Co.*, 17 A. & E. [N. S.], 127.) This rule is recognized in *Nelson* v. *Plimpton Fire-proof E. Co.* (55 N. Y., 480, 484). Her future conduct could not affect her right to sue, though it might bear on the question of damages. She was not obliged to remain in New York, or in any form to tender her services after they had been once definitively rejected.

If this theory of the plaintiff's case is correct, her only further duty was to use reasonable care in entering into other employment of the same kind, and thus reduce the damages.

This obligation is of a general nature, and not peculiarly applicable to contracts of service. The cases on this point are: *Emmons* v. *Elderton* (4 H. L. Cas., 646) ; *Costigan* v. *Mohawk and H. R. R. Co.* (2 Den., 609) ; *Dillon* v. *Anderson* (43 N. Y., 231) ; *Hamilton* v. *McPherson* (28 id., 76). The uncontradicted testimony was, that this duty was discharged by the plaintiff. She made effort to procure employment, but failed. While it would be unquestionably her duty to accept, if offered, another eligible theatrical engagement, it could scarcely be expected that she should spend much time in actively seeking for employment. Having made some effort and having failed, I think that she was justified, under the known usage of that business of forming companies of actors at certain seasons of the year, and the slight prospect of success in making an engagement after the fifteenth of September, in awaiting the close of the theatrical season. How far a person who is wrongfully discharged from employment is bound to seek it is not, perhaps, fully settled. (*Chamberlin* v. *Morgan*, 68 Penn. St., 168; *King* v. *Steiren*, 44 id., 99.) In the first of these cases it is said that it is the duty of a dismissed servant not to remain idle, and that the defendant may show, in mitigation of damages, that the plaintiff might have procured employment. This seems to be a reasonable rule. *Prima facie*, the plaintiff is damaged to the extent of the amount stipulated to be paid. The burden of proof is on the defendant to show either that the plaintiff has found employment elsewhere, or that other similar employment has been offered and declined, or, at least, that such employment might have been found. I do not think that the plaintiff is bound to show affirmatively, as a part of her case, that such employment was sought for and could not be found. (2 Greenl. on Ev., § 261, *a ; Costigan* v. *M. and H. R. R. Co.*, 2 Den., 609.)

No such evidence having been offered by the defendant, the plaintiff should recover the whole amount of her stipulated compensation as the damages attributable to the defendant's breach of contract. This, as has been seen, is the true

measure of damages. (*Classman* v.. *Lacoste*, 28 E. L. and
Eq., 140; *Goodman* v. *Pocock*, 15 Ad. & El., 576; *Smith* v.
*Thompson*, 8 C. B., 444; Smith on Master and Servant, 98.)

Some of the cases which may appear to conflict with this
opinion, or which are at variance with it, will now be briefly
reviewed. *Taylor* v. *Bradley* (39 N. Y., 129), is not opposed.
The only point decided in that case was, that if there be an
agreement to let a farm for three years on specified terms,
the plaintiff stipulating to occupy and work the farm, and to
divide the proceeds with the defendant, the owner, and the
latter breaks off the agreement, without cause, at the com-
mencement of the letting, the plaintiff may recover immedi-
ately, as damages, the value of the contract. This proposi-
tion is entirely consistent with the views maintained in the
present case, though there are *dicta* in the case not easily
reconcilable with the result reached by the court. (Pp. 141,
142.) *Polk* v. *Daly* (4 Daly, 411), is supposed by the
defendant to support his views. This is a clear mistake.
The court expressly approves *Moody* v. *Leverich* in the same
volume. (P. 416.) This case is most distinct and emphatic
in the plaintiff's favor. *Polk* v. *Daly* simply argues the
question as one of wages. The plaintiff in that case ten-
dered his services *before* the time for his employment arrived,
and was discharged. (It will appear hereafter that in a case
where a servant is discharged from his contract before the
time of service arrives, he has an election to wait until the
contract day arrives and then tender his services, or to sue at
once for damages.) He then left the city of New York and
remained absent until the whole period had expired, making
no efforts to obtain employment. The court held that if the
action were for *wages*, he must hold himself in readiness to
render the service. This is correct. No opinion was
expressed upon the point as to what the rule would have
been in an action for *damages*. As far as any authorities are
opposed to the theory maintained in the present case, they
will appear to rest on the *nisi prius* case of *Gandell* v. *Pon-
tigny*, already noticed. Thus in *Thompson* v. *Wood* (1 Hilt.,

96), there is a *dictum* of INGRAHAM, J., that a servant wrong-fully discharged has his election to sue for wages as they become due from time to time, or for damages. This remark that he could sue for *wages* evidently proceeds on the discarded doctrine of "constructive service." In *Huntington* v. *The Ogdensburgh, etc., R. R. Co.* (33 How. Pr., 416), there are some remarks of a similar nature by POTTER, J., though there is an apparent confusion between a claim for wages, in case the contract is carried out, and for damages, in case it is broken off. The opinion of JAMES, J., as reported in this case in 7 American Law Register (N. S.), 143, appears to be distinct in its adoption of the doctrine of constructive service. It relies on a case in Alabama (*Fowler* v. *Armour*, 24 Ala., 194), which distinctly holds that doctrine, and on the *dictum* of INGRAHAM, J., in *Thompson* v. *Wood* (*supra*). There are two or three other cases in the southern and western States that have followed *Gandell* v. *Pontigny.* (*Armfield* v. *Nash*, 31 Miss., 361; *Gordon* v. *Brewster*, 7 Wis., 355; *Booge* v. *Pacific R. R. Co.*, 33 Mo., 212.)

This doctrine is, however, so opposed to principle, so clearly hostile to the great mass of the authorities, and so wholly irreconcilable to that great and beneficent rule of law, that a person discharged from service must not remain idle, but must accept employment elsewhere if offered, that we cannot accept it. If a person discharged from service may recover wages, or treat the contract as still subsisting, then he must remain idle in order to be always ready to perform the service. How absurd it would be that one rule of law should call upon him to accept other employment, while another rule required him to remain idle in order that he may recover full wages. The doctrine of "constructive service" is not only at war with principle, but with the rules of political economy, as it encourages idleness and gives compensation to men who fold their arms and decline service, equal to those who perform with willing hands their stipulated amount of labor. Though the master has committed a wrong, the ser-

vant is not for one moment released from the rule that he should labor; and no rule can be sound which gives him full wages while living in voluntary idleness. For these reasons, if the plaintiff was discharged after the time of service commenced, she had an immediate cause of action for damages, which were *prima facie* a sum equal to the stipulated amount, unless the defendant should give evidence in mitigation of damages.

II. The next inquiry is as to the rule to be followed in case the defendant's denial of the contract preceded the time for entering into the service. It is now a well settled rule that if a person enters into a contract for service, to commence at a future day, and before that day arrives does an act inconsistent with the continuance of the contract, an action may be immediately brought by the other party; and of course, without averring performance, or readiness to perform. The leading cases on that subject are *Hochster* v. *De La Tour* (2 Ellis & Black., 678); *Frost* v. *Knight* (Law Rep. [7 Exch.], 111, reversing S. C. in L. R. [5 Exch.], 322); *Roper* v. *Johnson* (Law Rep. [8 Com. Pleas], 167); *Burtis* v. *Thompson* (42 N. Y., 246); *Crist* v. *Armour* (34 Barb., 378).

In *Hochster* v. *De La Tour* the facts were, that the plaintiff had agreed to enter the service of the defendant as a courier, on June 1st, 1852, and to serve in that capacity for three months, from the first of June, at a specified monthly salary. Before that day arrived, the defendant wholly refused to employ the plaintiff in the capacity aforesaid, and wholly discharged him from the agreement. The action was commenced on June 22d, 1852. The court held that the action was well brought, on the ground that it was an act done inconsistent with the relation of master and servant, and, accordingly, not so much a breach of the express agreement as of an implied contract, in no way to do any thing to the prejudice of the opposite party, inconsistent with that relation.

Another form of statement is, that the party renouncing

his engagement cannot complain if the opposite party takes him at his word, and treats him as having broken the contract. This doctrine results in the rule, that the opposite party has an option either to treat the contract as subsisting, and when the day arrives for commencing to serve to offer to perform, or to regard it as immediately broken, and to sue before the day arrives. This theory of an option is not objectionable, since, before the day for performance arrives, a party would not be bound to accept other employment, if offered, as he would be if the contract were broken off after that time. The principle that governs the one case is plainly not applicable to the other.

This case, at first, met with doubt, and even adverse criticism. It was powerfully assailed by Chief Baron KELLY, of the Court of Exchequer, in *Frost* v. *Knight* (L. R. [5 Exch.], 322). His arguments were carefully considered on an appeal of that case to the Court of Exchequer Chamber; where the doctrine of *Hochster* v. *De La Tour* was fully confirmed, and it is now accepted law. (S. C., L. R. [7 Exch.], 111.) Other cases to the same effect, are *Danube and Black Sea Co.* v. *Xenos* (13 C. B. [N. S.], 825), and *Wilkinson* v. *Verity* (L. R. [6 C. P.], 206). The result of the cases is stated by COCKBURN, Ch. J., in *Frost* v. *Knight*, in the Exchequer Chamber, in the following terms: "The law with reference to a contract to be performed at a future time, where the party bound to the performance announces, prior to the time, his intention not to perform it, as established by the cases" (citing them), "may be thus stated: The promisee, if he pleases, may treat the notice of intention as inoperative, and await the time when the contract is to be executed, and then hold the other party responsible for all the consequences of non-performance; but in that case he keeps the contract alive, for the benefit of the other party as well as his own; he remains subject to all his own obligations and liabilities under it, and enables the other party not only to complete the contract, if so advised, notwithstanding his previous repudiation of it, but also to take advantage of any

supervening circumstance which would justify him in declining to complete it.

" On the other hand, the promisee may, if he thinks proper, treat the repudiation of the other party as a wrongful putting an end to the contract, and may at once bring his action as on a breach of it; and in such action he will be entitled to such damages as would have arisen from the non-performance of the contract at the appointed time; subject, however, to abatement in respect of any circumstances which may have afforded him the means of mitigating his loss.

" This is now settled law, notwithstanding any thing that may have been held or said in *Philpotts* v. *Evans* (5 M. & W., 475), and *Ripley* v. *McClure* (4 Exch., 359)." (Pp. 112, 113.)

This principle was recognized in the very recent case of *Roper* v. *Johnson* (L. R. [8 C. P.], 167), where the further rule was laid down, as a deduction from the decisions above stated, that in case the plaintiff elected to treat the contract (for the delivery of coal) as broken, by the refusal of the defendant to perform prior to the days designated for delivery, the measure of damages was *prima facie* the difference between the contract price and the market price at the several periods fixed for delivery, notwithstanding those periods had not all elapsed when the action was brought, nor even when it was tried. The damages could be mitigated by proof that the plaintiff could have procured the coal at lower rates. As no such proof was offered, the full difference between the two rates was recovered. There is also a *dictum* in *Brown* v. *Muller* (L. R. [7 Exch.], 323), to the same effect.

The question now under consideration was discussed in *Crist* v. *Armour* (34 Barb., 378), and the case of *Hochster* v. *De La Tour* approved. The facts in *Crist* v. *Armour* did not involve the precise point in the case at bar, since the vendor, who had contracted to sell a quantity of cheese at a specified day, sold it to another before that day arrived, and put it out of his power to perform the contract. The principle is substantially the same, however, as that adopted in the

English cases. No appreciable distinction can be stated between the present case and that of *Burtis* v. *Thompson* (42 N. Y., 246). In that case there was an engagement to marry "in the fall." The defendant announced to the plaintiff, in October, that he would not perform his contract. It was held that an action commenced immediately was not premature. The opinions given by INGALLS, J., and GROVER, J., do not proceed on the same theory. The view of the latter judge coincides, in substance, with that of *Hochster* v. *De La Tour*, and is the only one on which the judgment can properly be supported. The fair construction of the words "in the fall," would have given the defendant until the last day of November to perform had there been no refusal on his part. It was the renunciation of his contract in October which made the action not premature. If the case is good law, it is difficult to maintain any distinction between it and the contract of service. Chief Baron KELLY, in *Frost* v. *Knight* (*supra*), attempted to draw a distinction between the contract of marriage and other contracts. This was discarded by the Court of Exchequer Chamber, which held the rule in *Hochster* v. *De La Tour* to be universal in its application to contracts to be performed at a future day; though I presume that it would scarcely be extended to mere promises to pay money, or other cases of that nature, where there are no mutual stipulations.

The whole result of the discussion may now be summed up. If the defendant in the case at bar repudiated his contract with the plaintiff *after* the time of performance had arrived, the plaintiff had an action for damages. Her interview with the defendant sufficiently showed her readiness to perform. Her action was for damages for not being permitted to work, and not for wages; and the defendant might show affirmatively, and by way of mitigation of damages, that she had opportunities to make a theatrical engagement elsewhere, which she did not accept. Without such proof she was entitled to recover the full amount of the compensation stipulated in the contract.

On the other hand, if the defendant rejected the services of the plaintiff before the time for performance arrived, she had an election either to consider his act as a breach of an implied contract with her to take her into his service, and bring an immediate action ; or to wait till the appointed day arrived, and then be in readiness to render her services. Her election will be evidenced by her acts. Having made no tender of her services at the appointed day, the presumption is, that she considered the act of repudiation by the defendant as final, and now brings her action for damages. Her complaint in the action and the evidence taken at the trial are sufficient to establish such a claim. Her damages are, as in the other hypothesis, *prima facie* the entire amount of her compensation, unless proof was offered in mitigation of damages, which was not done. In either aspect of the case the verdict and judgment were right.

My brethren concur with me upon the first ground discussed in this opinion, without expressing their views upon the correctness of the rule laid down in *Hochster* v. *De La Tour* and kindred cases.

The judgment of the court below must be affirmed.

All concur.

Judgment affirmed.