Spear, J.
This action is brought to recover for wages claimed to be due from the defendant to the plaintiff upon a contract made December 13, 1881, whereby, in consideration that plaintiff would faithfully and diligently serve the defendant as superintendent of the stone and brick work in the construction of a court house, then in process of erection at Lima, until the stone and brick work should be completed, etc., the defendant agreed to employ plaintiff as such superintendent during the period aforesaid, and to pay him for his services at the end of each and every *229 month the sum of one hundred dollars. The petition avers that the plaintiff entered upon the employment and dis■charged the duties thereof until April 6, 1882, when, although the stone and brick work was not completed and the plaintiff' was and has since been ready and willing to perform all the conditions of said agreement upon his part, the defendant refused to allow him so to do, and to pay him therefor, and discharged him therefrom without any reasonable cause, and has since hitherto refused to employ plaintiff for the remainder of said term. On the 18th day of August, 1882, plaintiff duly requested defendant to pay him his wages due him for his services upon and by reason of said contract for the period of two months from the 13th day of June, 1882, to the 13th day of August, 1882, which defendant refused to do, whereby plaintiff has lost the wages he otherwise would have obtained from said employment from said June 13, 1882, to August 13, 1882, to his damage m the sum of $200, for which, with interest from August 13, 1882, he asks judgment.
The answer of the defendant sets up in bar an alleged former recovery for the same cause of action, between the same parties, upon the same contract, at the October term, 1882, of the court of common pleas of Allen county, at which term a judgment upon the merits was rendered in favor of the plaintiff for $205.30. The petition of the plaintiff in the former case is set out aud is identical with the petition in the present case except as to time, the pleader averring in the first petition loss of wages from April 13, 1882, to June 13, 1882, and asking to recover for that.
To this answer a demurrer was interposed, which was overruled by the court of common pleas, and judgment entered for defendant, which judgment was affirmed by the district court. To reverse this judgment of affirmance the present action is prosecuted in this court.
The question presented is, whether, under such a contract as is here set out, the employee can, after being discharged, nothing being due him for wages actually earned, *230 maintain an action for each installment as though earned, upon an allegation of readiness to perform the work; or, whether his action is simply one for damages for the employer’s breach of contract, and he is limited to one action and one recovery for such damages.
If he can have his option as to these remedies then the canse of action in the first petition was not the same as in the present one, and the former judgment would not be a bar; if he cannot, but is limited to the last named remedy, to wit: to damages for breach of the contract, then, if both are based upon the same breach, it would follow that they are identical, and that one recovery would necessarily exhaust the plaintiff’s remedy, and so the former recovery would be a bar. There is but one dismissal, but one breach, pleaded. The dismissal was one act. And, as to recovery of damages for that, plaintiff" could not split up his cause of action, recovering a part of his damages in one suit, and the remainder afterward. He must include all that belonged to that cause of action in his first petition, so that one suit and one recovery should settle the rights of the parties. It would be at his own risk and peril if he negligently or ignorantly omitted a part of what might properly have been embraced in the cause of action in his first suit. His mistake, if he made one, might be matter of regret, but that could not change the rule of law.
The contention in support of plaintiffs’ claim is, that neither action was brought to recover damages for breach of contract on the part of the board, but that the plaintiff, having his option, upon being discharged, either to regard the contract as broken by the conduct of the employer and sue immediately for damages for its breach, or treat the contract as subsisting for all purposes and maintain an action for each installment as it became due, chose the latter, and this he might do, because, having been discharged without fault on his part, his rights were not lessened, nor was he bound to treat the contract as at an end. Having this choice of remedies, it is insisted, one suit to recover upon installments past due at the commencement of the *231 action, and judgment thereon would not bar a future recovery upon installments coming due thereafter. A contrary view, it is argued, would entail great injustice. Under it the employe would be compelled, unless he were ‘content with such meager damages as he could prove immediately after his discharge, or, at most, with less than his real loss, to wait until all were due before recovering any thing, and inasmuch as the object in contracting for pay by the month probably was that he might thus support himself and family, they would be loft to suffer while waiting for the last installment to become due, and he •would thus be driven, in any event, to unreasonable hardships and to a sacrifice of his rights, because of the wrongful act of the employer, a condition of affairs which the law would not j ustify.
That the doctrine contended for appeals strongly to the feelings, and is not without plausibility, would seem to be apparent from the statement, and that it has met with the favor of courts in several instances is apparent from an examination of the cases cited by counsel. Still, the question remains, does it rest upon solid foundation ? The first case in order of time is that of Gandell v. Pontigny, 4 Campbell, 375, decided at nisi prius at Sittings after Hilary term of the King’s Bench, in 1816, by Lord Ellenborough. Plaintiff was clerk for defendant at two hundred pounds per year payable quarterly. August 11th defendant discharged plaintiff and paid him for half quarter between 1st July and 15th August. Plaintiff denied the power to discharge and offered next day to continue work, which defendant declined. Lord Ellenborough’s decision is as follows: “If the plaintiff was discharged without sufficient cause, I think this action is maintainable. Having served a part of the quarter and being willing to serve the residue, in contemplation of law he may be considered to have served the whole. The defendant was therefore indebted to him for work and labor in the sum sought to be recovered. ”
John Win. Smith, in his note to Cutter v. Powell, 2 Smith’s L. C. part 1, says that a servant wrongfully dis *232 missed has his election of three remedies. First, a special action for breach of contract, and this remedy he may pursue at once; second, he may wait until the termination of the period for which he was employed, and then, perhaps, sue for his whole wages in indebitatus assumpsit, relying on the doctrine of constructive service, and he cites Gandell v. Pontigny.
Two cases are cited from the supreme court of New York, where a similar doctrine is held. In Huntington v. O. & L. C. Railroad Company, reported in 7 Am. Law Register (N. S.), 143, decided by James, J., the holding is that “ where a person employed for a certain time, at a fixed salary, payable monthly, is wrongfully discharged before the end of the term, he may sue for each month’s salary as it becomes due; and the first judgment will not be a bar to another action for salary subsequently coming due.” In the case of Thompson v. Wood, 1 Hilton, 96, Ingraham, J., says: “ Where an agreement of this kind is broken, the person employed has his election, either to sue for his wages as they become due from time to time, orto bring one action for damages for the breach of the contract.” This holding that the employe may sue for wages as they become due from time to time was not necessary to a decision of the case, and was, apparently, based upon the holding of Lord Ellenborough, before quoted. Strauss v. Meertief, 64 Ala. 299, is to the same effect. Brickell, J., in deciding the case, says: “It is not matter of doubt, that when a contract is made for personal services, for a particular term, at stipulated wages, if the party employed is, without cause, discharged during the term . . . he is not compelled to accept the breach of his employer as a termination of the contract; he may elect to treat it as continuing, and, keeping himself in readiness to perform the contract as his part, may recover the wages due on the expiration of the term. And, if the wages are payable by installments, ho may sue for and recover each installment as it becomes due.” Other cases by the same court hold alike doctrine, and it seems to have been accepted by the courts of Mississippi, Missouri, Illinois, and Wisconsin.
*233 The decisions in these cases appear to rest upon the doctrine of “ constructive service.” In several of them it is adopted in words; in others the principle is assumed without designating it by that title. If that is not their basis it is difficult to see that they have any. The theory of that doctrine seems to be that inasmuch as the employe holds himself ready to do the work, therefore he has done the work ; that readiness is, for all purposes, equivalent to performance. Eor the purpose of allowing a recovery in some amount his readiness to do and tender of performance may have the effect of performance to the extent of putting the employer in the wrong, but how can it be said, in truth, that he has done the work? that he has performed? The claim is based upon a fiction, an untruth. There is no acceptance of the services ; there is no delivery of them; the defendant has not had.the benefit of them; he has not had value received, and upon what principle is it that in law he is liable for the agreed price when he has not received the commodity which he agreed to buy, and the other party has not parted with the commodity which he agreed to sell ? The doctrine of “ constructive service,” as applied to a case of this character, is one beset with difficulties. It requires a plaintiff'to assume that to exist which in fact has no existence. He is demanding wages when he has rendered no service. The doctrine contradicts -the very term itself. How can he truthfully aver, as in indebitatus assumpsit, that the defendant is indebted to him for loork and labor donef Averring it, how could he prove it? But, aside from the matter of pleading and proof, in order to recover upon the strength of this doctrine, the employe must not only be willing to perform on his part, but must hold himself in readiness to perform. This implies that he will remain idle. Public policy, not to say public morals, forbids the encouragement of an idle class. Being subject to the universal rule that a person injured by the act of another is bound to use ordinary diligence to make the damage as light as may be, the discharged employe must use ordinary care to obtain employment. He may not be required to *234 seek elsewhere, or to engage in a different industry. But he is bound to use ordinary effort to obtain similar employment in the same vicinity; at' least if such employment is offered he is bound to take advantage of it. It would be a direct encouragement to idleness to hold that he who may have, but refuses, similar service, is entitled to full compensation the same as though he performed full labor. This rule stands squarely across the path of “constructive service.” For if the workman is bound to accept employment of another employer how can he continue ready to resume work under his former employer? A learned writer, whose valued páper in support of the doctrine of “constructive service” is cited by counsel, uses this language: “ The doctrine of constructive service, however, does not permit an employe who has been wrongfully discharged to remain willfully idle during the period for which he had been engaged.” A most singular conception of the ground work of the doctrine, it seems to us. Being actually at work for B., how can he be constructively at work for A.? Being required to hold, himself in readiness to resume his work for A., how can he engage with B.? Engaging with B., how can he be ready to resume work with A.?
“ Constructive service,” as here sought to be applied, never had, as we think, support iu principle, and the support derived from authority is at least very considerably impaired. The case of Gandell v. Pontigny, after being followed in several cases in England, was overruled in Archard v. Hornor, 3 Car. & P. 349, which was approved in Smith v. Hayward, 7 Ad. & Ell. 544, and in the later case of Goodman v. Pocock, 15 Ad. & Ell. (N. S.) 576. To like effect will be found Beckham v. Drake, 2 H.L. 606, and Emmens v. Elderton, 4 H.L. 645. Mr. Smith’s second proposition in his notes to Cutter v. Powell is expressly disapproved in Goodman v. Pocock, Erle, J., observing: “As to the other option referred to bj' Mr. Smith, I think that the servant can not wait till the expiration of the period for which he was hired, and then sue for his whole wages on the ground of a constructive service after dismissal. I think the true measure of dam *235 ages is the loss sustained at the time of the dismissal.” And in Clossman v. Lacoste, 28 E. L. & E. 140, a still later case, Lord Campbell says : “But if the contract is entirely broken, and the relation of employer and employed put an end to, I agree that the party suiug ought to allege in his declaration the whole” gravamen that he suffers by such breach of contract; and that he may receive therein all the damages that may inure to him in consequence.” So that, it may not be too much to say, that the doctrine of “ constructive service” has, in England, where it had its origin, been repudiated, and the law there established that a servant wrongfully discharged has no action for wages unless something is due for past services actually rendered, and as to any other claim on the contract it is for the breach of it, and for his damages resulting therefrom,being the ordinary action for-damages, and not the common-law action of indebitatus assumpsit. Nor are the eases in New York heretofore referred to now authority in that state ? For this see Moody v. Leverick, 4 Daly, 401, where the holding is to the effect that a servant wrongfully dismissed can not wait until the expiration of the period, and then sue for his whole wages on the ground of constructive service, his only remedy being an action for breach of contract of hiring. Also, Howard v. Daly, 61 N. Y. 362, where Gandell v. Pontigny, Thompson v. Wood, and the cases in Alabama, Mississippi, Missouri, and Wisconsin are distinctly disapproved, and the doctrine of “ constructive service ” declared to he “ so opposed to principle, so clearly hostile to the great mass of authorities, and so wholly irreconcilable to that great and beneficent rule of Jaw, that a person discharged from service must not remain idle, but must accept employment elsewhere if offered, that we can not accept it. . . . The doctrine of constructive service is not only at war with principle, but with the rules of political economy, as it encourages idleness, and gives compensation to men who fold their arms and decline service, equal to those who perform with willing hands their *236 stipulated, amount of labor.” The cases of Chamberlin v. Morgan, 68 Penn. St. 168; Willoughby v. Thomas, 24 Gratt. (Va.) 522; Whitaker v. Sandifer, 1 Duval (Ky.) 261; Chamberlin v. McCalister, 6 Dana (Ky.) 352, and Miller v. Goddard, 34 Maine, 102, show that a like view is held by the courts in those states, while Wood’s Mayne on Damages, 317, 328, and Wood’s Master and Servant, 246-7, indicate that that author considers the great weight of authority to be in the same direction. On page 246 of the latter work Mr. Wood uses the following emphatic language : “ It (the doctrine of constructive service) was finally exploded, and the doctrine established that a person wrongfully discharged could not, by simply holding himself in readiness to perform his contract, be regarded as having in fact performed it, and thus be entitled to sue for and recover his wages for the entire term, but that he must be restricted in his recovery to the amount of his actual loss. The action in such cases is not for wages but for damages for breach of the contract. It can not with any propriety be claimed that an action for wages can be sustained when the servant has in fact rendered no service. Such adoctrinéis in defiance of the meaning of the term, and rests upon no solid foundation either in principle or policy.” See, also, an instructive paper by Mr. Thornton, of the Indianapolis bar, on this subject, in 8 Southern Law Review, 432; andfor a full discussion of the present case, see the able opinion of the judge who presided in the common pleas, reported in 9 Week. Law Bulletin, 186.
To sustain the doctrine of “ constructive service ” would be in effect to hold that the contract is one which could be enforced specifically, for if, after discharge, and after the employer had repudiated the contract on his part and laid himself liable to full damages for its breach, the employe could treat the contract as subsisting in such sort as to recover upon installments as wages earned, when in fact they were not earned, and recover as each came due, the result would be a specific pex’formanee of the contract, and that, *237 too, by a multiplicity of suits. Surely no lawyer would seriously ask a court of equity to specifically euforce a contract which, in its nature, gives to the aggrieved party so plain and full a remedy at law in an action for damages.
As a result from the authorities, as well as upon principle, we are satisfied that in such a contract as the one in the case at bar, where the employe is wrongfully dismissed, but all wages actually earned up to that time are paid, the only action the employe has, whether he bring it at once or wait until the entire period of hire has expired, is one for damages for the breach'of the contract, and the measure of damages will be the loss or injury occasioned by that breach; and one recovery upon such claim, whether the damages be denominated loss of wages, or damages for breach, is a bar to a future recovery.

Judgment affirmed.