(70 App. Div. 172.)

TRIBUNE ASS'N v. EISNER & MENDELSON CO.

(Supreme Court, Appellate Division, First Department.  March 7, 1902.)

1. CONTRACT—ACTION FOR FULL PERFORMANCE—PLEADING AND PROOF.
    Under a complaint to recover for full performance of a contract, proof
    of matters excusing or waiving full performance is inadmissible, and
    recovery cannot be had on that theory.

2. SAME—CONTRACT FOR ADVERTISING—ABANDONMENT AND ACTION OF QUANTUM
    MERUIT.
    Where it is apparent that parties to an express contract for advertis-
    ing mutually abandoned it without any reservation or claim that ad-
    vertising done thereunder should be charged at the rates intended by
    the contract, recovery may be had therefor on a quantum meruit.

3. SAME—REBATE ON PRICE OF FORMER CONTRACT—ALLOWANCE.
    The right to a rebate, which plaintiff agreed to allow on the price of
    former advertising in consideration of the abandoned contract, cannot
    be allowed pursuant thereto.

Appeal from trial term, New York county.

Action by the Tribune Association against the Eisner & Mendelson
Company for advertising done by plaintiff.  From a judgment for
plaintiff only as to its first cause of action, and dismissing a counter-
claim, both parties appeal.  Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN,
INGRAHAM, and LAUGHLIN, JJ.

Selden Bacon, for plaintiff.
Julius J. Frank, for defendant.

LAUGHLIN, J.  The complaint contains two causes of action,
and the answer interposes a counterclaim.  The case was tried be-
fore the court, a jury trial having been waived.  The decision directed
the dismissal of the complaint upon the merits as to the first cause of
action, and also a dismissal of the counterclaim upon the merits, and
granted judgment for the plaintiff upon its second cause of action.
70 N. Y. Supp. 706.  The plaintiff appeals from the judgment in so
far as its first cause of action is dismissed, and defendant appeals from
that part of the judgment dismissing its counterclaim, and awarding
a recovery in favor of the plaintiff upon the second cause of action.

The plaintiff's first cause of action is for a balance due on an agree-
ment in writing for advertising, and it alleges full performance of the
contract on its part.  The material allegations relating to the first
cause of action are put in issue by the answer.  The contract on which
the first cause of action was found was in writing, and was made on
the 10th day of November, 1893.  The plaintiff therein agreed to
insert for the defendant "30,000 lines daily and Sunday advertising
* * * at the same price as paid heretofore."  It was further there-
in provided that the advertising should be done within the succeeding
sixteen months, and be paid for in fully paid unassessable capital stock,
$100 per share, of the "Johann Hoff" corporation, organized under
the laws of West Virginia, with a capital of $750,000, which shares
were to be issued quarterly, as the advertising was done, and were to
be purchased of the plaintiff at par by the defendant within two years
after such issue.  The plaintiff has only published about two-thirds

of the advertising agreed to be published under the contract, and for that it has been fully paid.  The price paid by the defendant theretofore for similar advertising was 40 cents per line, less 15 per cent., or net 34 cents.  The plaintiff seeks to recover at this contract price for the remainder of the advertising which it has not published.  The defendant duly raised the objection that, as the complaint was for performance, the plaintiff could not recover on the theory of waiver of full performance, and the complaint was not amended in this regard. The contention of the plaintiff is that it was ready and willing to perform, but that defendant failed to furnish the advertising matter with which it could perform, and its counsel cites the case of Smith v. Wetmore, 167 N. Y. 234, 60 N. E. 419, to sustain this proposition.   In that case the evidence showing performance on the part of the plaintiff was received without objection, and the complaint was for that reason amended on appeal to conform to the proof, and we think the rule stated by the court, that "when performance of a contract is alleged by the plaintiff, and denied by the defendant, it is competent for the plaintiff to prove that the defendant would not allow him to perform, or had repudiated the contract, or had committed a breach of its terms by hindering performance, or refusing to abide by its obligations," does not apply in this case.  Here the defendant did not repudiate the contract.  It merely failed to call upon the plaintiff to perform, and the plaintiff made no request for performance on the part of the defendant.  We think this case is governed rather by the doctrine now firmly established, that under a complaint for full performance of a contract proof of matters excusing or waiving performance is not admissible, and a recovery may not be had upon that theory.   Gatling v. Central Spar Verein, 67 App. Div. 50, 73 N. Y. Supp. 476; Fox v. Davidson, 36 App. Div. 159, 55 N. Y. Supp. 524; La Chicotte v. Electric Co., 15 App. Div. 380, 44 N. Y. Supp. 75; Weeks v. O'Brien, 141 N. Y. 199, 36 N. E. 185.  The defendant had a right to assume that the plaintiff intended to show, as it alleged, that it advertised 30,000 lines, the full quota specified in the contract.  The defendant was justified in resting upon its defense that the contract had not been fully performed, and that the plaintiff had been fully paid for the work done.  Had the plaintiff alleged a breach of the contract on the part of the defendant in failing to furnish it the advertising matter, and sought to recover the profits it would have made on performance, the defendant might have interposed a different defense, and would then be in the position of reducing plaintiff's recovery by the amount of the expense to which plaintiff would be put in performing the contract.  Howard v. Daly, 61 N. Y. 362, 19 Am. Rep. 285. It follows that the complaint as to the first cause of action was properly dismissed.

The second cause of action alleged is both upon an express contract and upon a quantum meruit for advertising between the 3d day of October and the 15th day of December, 1895.  The plaintiff proved that during this time it published 2,553 lines of advertising matter for the defendant, the reasonable value of which was $1,794, and it has recovered the full amount.   This recovery is on the basis of 40 cents per line, and double charge for display, which was

the usual rate charged by the plaintiff in the absence of a special written contract. If the defendant's liability for this advertising was on a quantum meruit, we do not agree with the contention of the defendant that the evidence is insufficient to sustain the recovery. It is further claimed, however, that this advertising was done under written contract, which fixes the price to be charged at 33⅓ cents per line, less 15 per cent., or 28⅓ cents net, with no extra charge for display. Mr. Eisner, the secretary of the defendant, testified that in the early part of the summer of 1895 the manager of the plaintiff's advertising department, Mr. Masters, since deceased, called upon him with reference to making a new contract for advertising; that he told Mr. Masters that he understood the plaintiff was giving lower rates to other advertisers than to defendant, whereas he (Masters) had constantly assured the witness that the defendant was getting the lowest price, and that was the reason it made the 30,000 line contract in 1893; that Mr. Masters said that some advertisers got a page rate, covering 10 pages, at 33⅓ cents, less 15 per cent., and that they were allowed to split it up in certain spaces as long as it covered 10 pages; that the witness replied that that only made 20,000 lines, and asked how Mr. Masters expected him to obtain a new contract from the defendant when it had been overcharged; and further said that, unless Mr. Masters could give the rebate to the defendant on the space already used, "we will not start on a new contract in the fall"; that Mr. Masters replied, "I will try to get you a new contract for the fall, allowing us the rebate on the space already used"; that after extended negotiations Mr. Masters finally agreed to this proposition on the 30th day of September, 1895, and the witness, in the presence of Mr. Masters, dictated a letter to his stenographer, addressed to "G. H. Haulenbeck Advertising Agency," through which the business between plaintiff and defendant had been theretofore carried on, as follows:

"Gentlemen: We beg to inform you that we have made an arrangement with the New York Tribune through Mr. Masters, and we hereby authorize you to give them the contract for 50,000 lines, full preferred position, at 28⅓ cents per line, to be used during three years, no extra charge for display, cuts, or position. From the first bills rendered under this contract you will please deduct the amount of $646.83 on the Hoff account, and $487.20 on the Carlsbad account, due us from this paper on the old contract.
"Yours very truly, Eisner & Mendelson Co.,
"Per Eisner."

That this letter was written out, signed, and delivered to Mr. Masters, and by him delivered to the advertising agency on October 2, 1895, and he thereupon received copy for advertising matter, and commenced performance of the contract. A few days later Mr. Masters received a letter from the advertising agency under date of October 4, 1895, containing an order for this advertising, which he accepted in writing for the plaintiff. This letter was as follows:

"Please enter our order for fifty thousand (50,000) agate lines, to be used for the advertising of the Eisner & Mendelson Co. and Johann Hoff, as per copy and instructions furnished by us from time to time. This amount of space to be used within two years if possible. If not, an extension will be given for the balance. Position of this advertising is to be at top of column

and alongside reading. or first following reading and alongside reading. No extra charge for display, cuts, or position. For this please charge us 28⅓ cents net per line for space used each month."

Subsequently a misunderstanding arose between the parties as to the terms of the contract for this advertising. It appears from the correspondence that Mr. Masters, representing the plaintiff, contended that the understanding was that the plaintiff, in consideration of the rebate allowed defendant on the old contract, was to receive cash for all stock which it had received from the defendant under the former contract without awaiting the two years therein specified, and the defendant's secretary contended that there was no such understanding. Accordingly, on the 13th day of December, 1895, Mr. Masters wrote the defendant reciting his understanding of the contract and the controversy that had arisen between them, and said that since the defendant's understanding of the contract seemed to be so entirely different from his, and as defendant did not seem inclined to talk the matter over and adjust it, "it seems best to stop all business now running until such adjustment is made or new contract can be made. Trust that this will be satisfactory, and hoping for a favorable reply." On the following day the defendant's secretary replied asserting his recollection of the parol contract, and saying: "If you have changed your mind, or your office does not seem to be satisfied, we will stop there where we left off before I went abroad, and will consider the matter as if no agreement or contract had been made between us." On the 30th day of the same month Mr. Masters replied to this letter, reiterating at length his recollection of what took place between him and the defendant's secretary, and closing as follows: "As you know, the advertising has been stopped for the present until an adjustment can be made of this business." On the 2d of January, 1896, the defendant, by its secretary, wrote Mr. Masters again, saying that his recollection seemed to be correct in all respects except where he says the new contract was made on the understanding that the defendant was to pay for the stock held by plaintiff in cash, and asserting that Mr. Eisner had a distinct recollection to the contrary; and this letter closed by saying that Mr. Eisner had informed Mr. Masters at the time of the negotiations that the old contract would have to take care of itself, and that was the only way he could secure a new contract from the defendant, and that he was of the same opinion still, and therefore could not see how they could come to any settlement, and that the defendant would "simply have to do without the Tribune."

Down to December 14th the plaintiff had charged this advertising to the defendant on its books at the rates specified in the letter from the defendant to the advertising agency, and from the advertising agency to plaintiff's representative. The fair inference is that the minds of the parties never met on the new contract. They mutually so agreed by their correspondence and by suspending the advertising. No subsequent agreement was reached. If either of the parties wished to stand upon its claim, it should have asserted its intention so to do; but this neither of the parties did. If the defendant wished to insist as a condition of abandoning the contract that the advertising done up to that time should be charged only

at the rates intended by the contract, it should have made a reservation to that effect. On the contrary, its proposition was, "We will consider the matter as if no agreement or contract had been made between us." We are of opinion that neither party insisted that a contract had been made that was to be binding upon the parties either in the past or in the future. In these circumstances, the plaintiff was entitled to recover for the advertising thus done as if no contract had been made.

These views also dispose of the defendant's counterclaim. The counterclaim was for the rebate under the contract of 1893, which, as has been seen, for the purpose of obtaining the new contract for 50,000 lines of advertising in 1895, the plaintiff agreed to allow on such new contract. The defendant has proceeded on the theory that the letter from him to the advertising agency, directing the deduction of the two items of $646.83 and $487.20 rebate on the old contract from the first bills rendered by the plaintiff on the new contract, constitutes an account stated. It neither alleged nor proved the facts which would warrant the allowance of this counterclaim on any other theory than that it was an account stated. It is evident that the defendant yielded to the plaintiff's claim concerning this rebate in consideration of the defendant giving it the new contract. The new contract never having been made effectual, and having been abandoned by mutual consent, the right to the rebate, so far as it rests upon that contract, falls with it. It will be observed that the rebate was to be allowed on the first bills rendered under that contract. As no bills have been rendered, paid, or accrued under that contract, it is evident that the defendant cannot be allowed the rebate in the manner contemplated by the parties.

The judgment should be affirmed, but, both parties having appealed, the affirmance is without costs. All concur.