## PETERSON v. DREW.

(First Division.    Juneau.    November 1, 1905.)

No. 360a.

1. MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—BREACH BY MASTER—DAMAGES.

Where a contract for labor for a fixed wage and period is broken by the discharge of the laborer, he cannot recover full wages if he fails to exercise reasonable diligence in seeking other employment, and thus reducing, or attempting to reduce, the damages or loss to himself resulting from the wrongful discharge.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 54.]

2. SAME—DISCHARGE OF SERVANT—GROUNDS.

Where a contract of service or hiring is broken as the result of the servant's own inefficiency, carelessness, neglect, and inattention to his duties under the contract, he cannot recover for the period after discharge, because he alone is responsible for the breach of the contract.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 32.]

E. M. Barnes, for plaintiff.
Malony & Cobb, for defendant.

GUNNISON, District Judge.    The plaintiff sues on two counts under contract for services, which is as follows:

"This agreement, made and entered into at Juneau, Alaska, this 22d day of July, 1903, by and between Thomas D. Drew, of the one part, and John G. Peterson, of the other part, witnesseth:

"Whereas Thomas D. Drew has this day purchased of and from said John G. Peterson the following named lode mining claims [here follows description of mining claims], and is desirous of securing the services of the said John G. Peterson for the period of one year from date hereof in and about said mining claims premises in the working and developing of the same,

"Therefore, it is hereby agreed by and between the parties hereto that the said John G. Peterson shall and will enter into the employ and service of the said Thomas D. Drew for one year from the date hereof, and perform such work and services required of him in and about said mining claims in the working, mining, and developing of the same.

"In consideration of the foregoing promise and agreement on the part of the said Peterson, the said Drew hereby agrees and promises to pay the said John G. Peterson for such services, to be rendered as aforesaid, a monthly compensation or wages of $150 for each and every month during the life of this agreement."

Under this agreement plaintiff entered the employ of the defendant on the 22d day of July, 1903, though he did not actually begin work on the premises until the 10th day of August following. He continued to perform the services as per agreement until the 20th day of April, 1904. Prior to that time, however, and on the 20th day of January, 1904, the defendant became dissatisfied with the manner in which the plaintiff was performing those duties, and informed plaintiff that he no longer required his services. Plaintiff, however, continued to carry out his part of the contract, and defendant accepted such service until the 20th day of April, 1904, when defendant finally definitely dismissed plaintiff. During the greater por- of this time plaintiff acted as defendant's superintendent on the mining claims, buying supplies for the camp, and paying the workmen from a fund on deposit in the B. M. Behrends Bank at Juneau, which was subject to his check. As such superintendent he kept the time of the workmen employed upon the

2 A.R.—36

claim. During this time he lived at the messhouse with the other miners, all of whom paid or were charged $1 per day or $30 per month for their board, and this was deducted from their wages. Plaintiff, however, did not deduct this amount from his wages, but collected the whole amount whenever paid. It also appears from the evidence that in keeping the time of and paying the men at the works plaintiff overpaid them to the amount of $152.45.

Plaintiff sues upon two counts—one for wages earned and unpaid, and the other, under the terms of the agreement, for wages from April 20, 1904, to July 22, 1904, the period for which the contract was to run after the plaintiff had been discharged from the service of the defendant. Under the contract it is plain that the plaintiff's compensation began to run from the date thereof, regardless of when he actually went upon the mining claims, inasmuch as the contract provides that plaintiff was "to enter into the employ and service of the said Drew for the period of one year from the date" of the contract, and his compensation was to be "$150 for each and every month during the life of this agreement." The fact that the defendant attempted to discharge the plaintiff on the 10th of January, but that plaintiff continued to perform the duties under the contract until the 20th day of April thereafter, without any further remonstrance on the part of the defendant until he did actually discharge him on the latter date, does not relieve the defendant from the liability under the contract; he having accepted such service and such benefit as might accrue therefrom. Therefore the plaintiff should recover at the rate of $150 per month from the 22d day of July, 1903, to the 20th day of April, 1904. So long as he rendered the service to defendant that he had agreed to render under the contract, and defendant, even though he had told him to quit, did not enforce his direction, and was receiving the benefit of the service, he should be paid therefor.

Plaintiff on the second count seeks to recover wages for the balance of the life of the contract at the stipulated price. The first question to be determined is whether or not plaintiff is wrongfully discharged. From the evidence adduced on the trial, there is no doubt but that defendant had cause, and good cause, for discharging the plaintiff, and the court so finds.

This being the fact, it becomes necessary to inquire as to what are plaintiff's rights in the premises. Even had the plaintiff been wrongfully discharged, he could recover nothing for the balance of the term under the theory of constructive service, upon which his second cause of action is based; for while there are some cases, English and American, that uphold that theory, the weight of authority and sound reasoning is against the constructive service. This is discussed in the case of Howard v. Daly, 61 N. Y. 362, 373, 19 Am. Rep. 285, as follows:

"This doctrine is so opposed to principle, so clearly hostile to the great mass of authority, and so wholly irreconcilable to that great and beneficent rule of law that a person discharged from service must not remain idle, but must accept employment elsewhere if offered, that we cannot accept it. If a person discharged from service may recover wages or keep the contract as still subsisting, then he must remain idle in order to be always ready to perform the service. How absurd it would be that one rule of law should call upon him to accept other employment, while another rule of law required him to remain idle in order that he may recover full wages. The doctrine of constructive service is not only at war with principle, but with the rules of political economy, as it encourages idleness, and gives compensation to men who fold their arms and decline service equal to those who perform with willing hands their stipulated amount of labor. Though the master has committed a wrong, the servant is not for one moment released from the rule that he should labor, and no rule can be sound which gives him full wages while living in voluntary ease."

The evidence discloses that not only did plaintiff not enter other employ, but that he made no effort to seek other employment, as he was in duty bound to do on his theory of the case. 20 Am. & Eng. Ency. of Law, p. 34, and cases there cited.

Upon that theory of the case, had he been wrongfully discharged, he could not have recovered full compensation, as he seeks to herein, because of his failure to exercise reasonable diligence in seeking other employment, and thus reducing, or attempting to reduce, the damages or loss to himself resulting from the wrongful discharge.

But where the contract of service or hiring is broken as the result of the servant's own inefficiency, carelessness, and neglect of, and inattention to, his duties under the contract, as in the case at bar, the servant may not hope to recover anything upon the contract after its breach, because he alone is responsible therefor.

Let findings of fact and conclusions of law be prepared in conformity herewith.