Browne, J.
This action is brought to recover the sum of $1,150, for which amount it is claimed the defendant, as one of the directors of the American Opera Company, limited, has become liable under the statute, by reason of his having, as such director, joined in the annual report of the -corporation made in January, 1887, which report contained material representations which were false in fact-.
The answer admits the incorporation of the opera company, and also that the defendant was a director during bhe periods mentioned in the complaint.
The plaintiff’s claim is predicted upon a judgment recovered by him against the opera company upon two causes -of action founded upon an agreement in writing, entered into between the company and himself on July 1, 1886, whereby he was engaged in the capacity of baritone at a weekly “salary of $100, for a period of not less than twenty *307 íivo weeks, commencing on November 1,1886 ; the particular allegations of the first cause of action being that he commenced to perform under that agreement, and continued for a period of nine weeks ; that, he was paid only seven of the nine weeks, not having received payment for the first two weeks, as specified in the contract, amounting to §200, and the second cause of action alleging that the plaintiff was wrongfully discharged from the employment, of the opera company, on January 1, 1887, and claiming $1,000 damages for the unexpired term of sixteen weeks. '
' The judgment was entered in that action by default, on April 25,1887, for $1,823.90 damage and costs ; an execution was issued against the company thereon, and returned, unsatisfied.
After the plaintiff’s discharge, and before the expiration of the term mentioned in his contract with the opera, company, he found other employment by which he earned in the neighborhood of $750. Upon the trial this sum was credited upon his claim, thus reducing it to $1,150.
The complaint in the present action alleges not only the-facts to charge this defendant with the statutory liability, but also the facts upon which the original cause of action was based ; and the defendant, by his answer, puts in issue every fact, except that of the incorporation of the opera company, and that he was a director of such company during the period set forth in the complaint. By way of avoidance, he alleges he signed the annual report before mentioned, under instructions of counsel to said company, and in reliance upon said counsel’s statements, believing the matters set forth in the report to be true.
The first question to be determined is as to whether the report as filed was false in any material part. The plaintiff alleges many false statements, from which I select two. If the allegations are sustained as to these, sufficient is shown to maintain the cause of action, on that ground. The first-is as to stockholders; the second is the amount actually paid in for capital stock. It was stated in the report, as filed, that O. P. Huntington and N. K. Fairbank were stockholders. Huntington to the extent of $5,000, and Fairbank to the extent of $2,500, and that these sums had been'actually paid in for the stock. These gentlemen were .¿reduced as witnesses upon the trial; and each testified that he was not a stockholder, and never subscribed for any of the stock nor had ever paid to the company any sum .of money for its stock. This testimony remains uncontradicted. and the witnesses are unimpeached. The falsity of this necessarily established the falsity of the other statement as to the amount paid in for capital stock of the company. The report states that the actual amount paid *308 in for capital stock was $148,600, which included the sums claimed to have been paid in by Huntington and Fairbank. That these statements were material is beyond question. Section 21 of the act of 1875, under which the company was Organized, provides that an officer of the corporation shall be liable for all the debts of the corporation contracted while he is an officer thereof, where a report signed by him is false in a material representation. Section 18 requires that the corporation shall annually make a report to be filed in the office of the secretary of state, such report to state the amount of the capital, and the proportion actually paid in,.and the names of its then stockholders. The mandatory character of this section as to what the report must •contain, would be sufficient to establish the materiality of the matters required to be stated. But were we to look ior a reason for the requirement, it could be found by saying that the legislature, in its wisdom, deemed it advisable to give the public an opportunity to become advised of the financial condition, as well as the personal, of the corporation with whom it might have business dealings, and insisted upon compliance with the law by imposing personal liability upon those who assumed the duty of complying with section 18, and failed therein, in. the respects mentioned. The defendant assumed that duty, and he cannot now escape liability on the ground that be was not, as he claims, an officer of the company, within the meaning of section 21 of the act. By reference again to section 18, it will be seen that it requires that the report shall be signed by the president and a majority of the directors, and section 21 makes the officers who signed the report jointly and severally liable for its falsity. The two sections should be read together, and when thus read it would be illogical to say it was not intended that all who signed the report should come within the designation of officers. The report was required to be signed by but one person popularly known as an officer, and by the others named as directors. The legislature did not intend that those who were possessed of the qualification necessary to make the annual report were to be liable, as “ officers ” of the corporation, for the material false statements.
Bouvier defines directors to be “persons appointed or elected according to law, authorized to manage and direct the affairs of a corporation or company;” and an officer to be one “who is lawfully invested with an office.” A director is such an officer because he is lawfully invested with the power to manage the affairs of the corporation. See 7 Metc., 152; 10 Gray, 173.
This leads us to the question whether the claim in this action was a debt of the company during the time the de-^ *309 fendant was an officer. The contract was made on July 1, 1886, to go into effect November 1, 1886. By its terms, the plaintiff agreed to place his entire services in the capacity of baritone, at the disposal of the company for a period of not less than twenty-five weeks, the company agreeing to pay for such services the sum of $100 per week, or $2,500 in the aggregate. This' obligation, incurred on November 1, 1886, was dependent upon performance or offer to perform by the plaintiff of his part of the contract. The -evidence in this case is, that the plaintiff not only performed as long as he was permitted, but was also ready and willing to continue in the fulfillment of his part of the contract at the time he was stopped and prevented by the company’s general manager, Locke. It has been held in Howard v. Daly (supra, 61 N. Y., 362), that where a performer was ready and willing to enter upon the duties of his engagement, but was prevented by his employer absolutely repudiating the contract, he was entitled to recover the amount of compensation fixed by the contract of employment for the whole term, not as wages, but as damages for the breach; and in Everson v. Powers (89 N. Y., 527), it was held that in such a case the cause of action arose at the time of the breach of the contract, and that plaintiff was then entitled to sue and recover such actual damages as he had sustained by the breach. It is a logical sequence that an obligation of this character incurred by contract is a debt of the company, as it was an obligation for a sum of money which the company was bound to pay to the plaintiff by the terms of the contract. A contract obligation of this nature has been so often defined as a debt, that further reference to the subject would be an act of supererogation.
It is contended, however, by the defendant that the company was relieved from liability for the debt initially incurred under the contract, by the exercise of the right given under the provisions of rule six. If the right was correctly exercised, there would be no doubt that the company was relieved from such liability, and that the defendant in such case could not be held. It may be well at this point to dispose of a question raised by plaintiff that the judgment is conclusive of the company’s indebtedness to him, if it is not impeached, and that the cause of action upon which the judgment is founded is not open to question in this action. He cites Stephens v. Fox, 83 N. Y., 313, and Allen v. Clark, 108 id., 269; 13 N. Y. State R., 309.
An examination of these cases shows that they do not abrogate the rule requiring the establishment of the debt as a distinct issue in the case.
In Stephens v. Fox, the court held that a judgment was *310 competent evidence of the plaintiff’s status as a creditor and of the amount due in an action against the stockholder for an amount unpaid on his stock.
Allen v. Clark holds that a judgment for costs recovered against the corporation is a debt which could be enforced against a director for failure to file the annual report. It will be seen, at a glance, that the judgment in that case created the debt and was the best evidence of it.
In McMahon v. Macy (51 N. Y., 155), it was held, in an action against a stockholder by a creditor of his company to enforce a liability imposed by statute, that a judgment against the company is neither conclusive nor prima facie evidence of the existence of a debt against the company. This rule is the law to-day.
The evidence offered by plaintiff leaves no room to question performance on his part, as well as his willingness and ability to continue, if permitted by the company. The burden then shifted to the defendant to justify the termination of the contract; and he relies upon evidence introduced by plaintiff, to sustain his position. The evidence is a notice from the general manager of the company to the plaintiff in these words: “your work is not musically satisfactory to the board,” and that the right to terminate the contract was exercised under rule six, of the contract. The portion of rule six, bearing upon the question of the right to discharge, is in the following language! “In the event either of in competency, or of such continued illness or decrease of physicial or vocal faculties as to prevent one from doing service for a period of more than two weeks, the company may in its discretion cancel or annul the contract with the party in question, without being subjected to any claims for damages. The vocal and musical directors shall be the sole judges of the fact and extent of the incompetency, in applying this rule.”
There is no evidence of “illness or decrease of physical or vocal faculties” on the part of the plaintiff for any period of time, or that the musical or vocal directors had ever, as a fact, determined that the plaintiff was ‘ incompetent.’ ”
The defendant claims that a proper construction of the sentence supports his theory, that the word “ incompetency” is so disconnected from the other clauses of the paragraph as to make it an independent condition, which, if found to exist in the performer, by the 'vocal and musical directors, justifies the annulment of the contract. Grammatically construed, the defendant is correct in his proposition. The use of the comma before the word “or” in the sentence might be taken to denote that “ in competency” and “physical disability” are one and the same subject, while its omission would signify different subjects, but the use of *311 the correlative of “or,” i. e., “either,” clearily indicates that “or,” notwithstanding the comma before it, should be accepted as a connective of substitutes in the sentence, thus making incompetency and decrease of physical power separate conditions. Notwithstanding, the court is permitted in the interpretation of contracts to reject grammatical constructions and adopt those which will give effect to the intent of the parties. Porter, J., In Hoffman v, Ætna Ins. Co. (32 N. Y., 405, 413):
“It is a rule of law, as well as ethics, that where the language of a promisor may be understood in more senses than one, it is to be interpreted in the sense in which he had reason to suppose it was understood by the promisee.”
What was the sense in which the plaintiff understood the contract, is to be gathered from the contract and its surroundings. He was engaged in New York as a baritone, that is, a singer possessed of a certain quality of voice. He agreed to give his entire services in that capacity to the company, to sing in opera, public rehearsal, oratorio, concerts, etc., in various parts of the United States and Canada. The contract is printed, with the space for the name of the performer in blank, while that of the company is inserted in printed type. All its provisions show jealous care for the protection and interests of the company. It was evidently prepared by the company: after thoughtful consideration. The performer could hardly be expected to make a critical examination or nice analysis of its contents. Nor, if he did so, would he be bound to understand from it that the penalty of dismissal by the company would attach at any moment the musical and vocal directors should deem it expedient to say he wras incompetent, no matter what part of the country that conclusion might be arrived at, nor what period of a season. The contract refers to seasons of about twenty-five weeks as the term of its duration.
Is it not more in accord with reason to assume that rule six was intended for the protection of both parties, that is, should the plaintiff from physical causes,"become unable to perform his part, and such disability continue for more than two weeks, the company could relieve itself from, further liability; and, on the other hand, in case the disability wTas merely temporary the performer would be allowed a reasonable time to recuperate, before being deprived of the benefits secured by the contract, after binding himself for the season. In other words, if the baritone was one whom it was for the interest of the company to retain,' temporary illness or disability would not relieve him from his contract. If temporary disability occurred, had he not *312 the right to assume that the company should give him the opportunity to recover, and that he would not be arbitrarily dismissed without a cause arising from the conditions stated in the rule, and existing for more than two weeks. But, if we disregard all extrinsic circumstances, and take the language of the rule only as the guide for interpretation, the plaintiff is strengthened in his conclusion. Webster defines “incompetency” tobe “want of sufficient power, either physical, intellectual or moral; insufficiency; inadequacy;” and illustrates it by “incompetency of a child for hard labor; of an idiot for intellectual labor.”
Applying the definition to the “incompetency” expressed, would it not occur to those whom it was' intended to affect that it was such as would be produced from physical causes arising during the life of the contract?
If not, why use the phrase, “ or of such continued illness or decrease of physical or vocal faculties as to prevent one from doing service for a period of more than two weeks? ” “Incompetency,” in the signification claimed for it by the defendant, would include all classes and causes of disability, physical and artistic. Why then environ that subject with special clauses, specifying causes which would produce results already comprehended within that generic term, if it were not intended to place a limitation upon the scope and extent of the word, and so confine its meaning to the actual causes named, “illness or decrease of physical or vocal faculties.”
Again, the vocal and musical directors are made the arbitrators of the fact and extent of the incompetency under the rule. If, as claimed by the defendant, there is no qualification or limitation upon the word, or that it is not controlled by any other word or sentence in the rule, why the necessity of "its measurement by the directors?
If the plaintiff was incompetent, in an artistic sense, he was, under the definition, wholly unfit to perform as a baritone, as the fact arid extent of that incompetency did not require to be adjudged by the directors as a reason for discharging him. • The law secured to the company the right at any time, without such adjudication, to discharge the plaintiff for cause, such as unfitness or inherent want of ability to render the service which he agreed to render; it is the rule that when a person engages to perform a service requiring the possession of special skill and qualities, there is an implied warranty on his part that he is possessed of the requisites to perform the duties undertaken, and if found wanting, the right to discharge exists.
If then the “incompetency” intended by the rule was of such a character as time might remove, and as to the fact and extent of which the directors were to be the sole *313 judges, it could only have applied to physical incompetence in its relation to this contract.
It is scarcely to be assumed that if he was incompetent from an artistic standpoint, it could be qualified or measured, or that time would remove the disqualification, or that the company would have retained him and paid him a large salary for seven weeks without complaint or adverse criticism.
I am, therefore, urged to the conclusion that the true interpretation of rule six is that the incompetency must be such as is produced from physical causes arising after the contract is entered into.
Nor does the reason for discharge stated in the notice come within the provisions of the rule. The ground of dismissal is “not musically satisfactory to the board,” not * ‘ incompetency,and the dissatisfaction of the board is not tantamount to a finding, of incompetency by the musical and vocal directors.
I am well aware that where a contract for services involving artistic or scientific qualities, contains a proviso requiring them to be rendered to the satisfaction of the employer, the employment may be terminated at the mere will of the employer, and he can exercise the power to discharge arbitrarily, and when exercised, there is no redress for the employee. See Glenny v. Lacy, 16 N. Y. State Rep., 798.
In the contract here, there is no provision of that kind. The cause allowed for discharge is “incompetency,’’not “dissatisfaction.” The artist may be thoroughly competent, yet may not satisfy many persons in the rendition of his parts. “Satisfaction” is an expression entirely unique in its application to artistic efforts, and I know of no words which can take its place, and will preserve to the employer the right to terminate a contract because he is not satisfied. It is a quality assumed to be possessed solely by the employer, not discoverable or ascertainable except by the expression of the possessor. When acted upon, it i? conclusive upon the employee. Had it been intended to be made a provision of the contract in this case, it should have been expressed therein. As it is not so expressed, it cannot now be injected or substituted for another word, to preserve the company from _ liability. It has also been held that until the dissatisfaction is determined by the party authorized to act, it has no effect or force. Applying that rule to the present case, the contract makes the musical and vocal directors of the company the judges as to the incompetency. The board of directors of the company are inferentially the board referred to in the notice of discharge. Nothing in the contract gave them the right to determine the compe *314 tency of the plaintiff, and he could only be discharged in accordance with the provisions of the contract, except under such other circumstances as would be sanctioned by law, for good cause shown.
The remaining question is as to whether the defendant is relieved from liability because he believed the annual report signed by him to be true when he signed it. It must be answered in the negative. The law required the defendant, as one of the directors of the company to join in the-annual report, and provided that he would be visited with personal liability for the debts of the corporation in the event of the report made by him containing statements false'in any material fact. I have already shown that the annual report in which the defendant joined, contained material false statements. It is no defense that he acted in good faith, and under legal advice. Gardner v. People, 62 N. Y., 299.
It was held in that case that where an act is prohibited by statute, it is no defence that the party acted in good faith and under legal advice.
The evidence satisfies me that th=e defendant acted upon the advice of counsel, and relied thereon, and that he did not intentionally sign the report knowing or believing it to-be false.
Judgment is directed for the plaintiff.