### GRIFFIN v. BROOKLYN BALL CLUB.

(Supreme Court, Appellate Division, Fourth Department. January 7, 1902.)

**1. CONTRACT FOR SERVICES—INSTRUCTION—ASSIGNMENT—ACCEPTANCE.**

Plaintiff contracted to play baseball for defendant club for six months during the year 1899 for $3,500, with the option to the club to renew the contract for two years, and agreed not to contract with any other club during the contract. The club was authorized to assign the contract and plaintiff's services to any other club in the National League, and on acceptance of such assignment the contract was to become binding on the assignee, and released defendant. Before beginning the services plaintiff was notified that he had been assigned to another club, and received notice from it to report before the date fixed in the contract and "arrange the adjustment of his salary," and during the negotiations concerning a claim against defendant he was notified of a second transfer to another club, and notified by it to report and adjust the salary; all the correspondence making it apparent that such adjustment meant a material reduction thereof. *Held*, that such correspondence did not show an acceptance of an assignment of plaintiff's contract with defendant, and hence defendant was not released from its contract by such purported assignments.

**2. SAME—BREACH.**

Where, after the execution of a contract to play baseball, defendant attempted to transfer plaintiff to another club under the contract, but the assignment was invalid for want of acceptance by the transferee, and defendant's president notified plaintiff that its connection with defendant had been severed, such conduct constituted a breach of the contract, entitling plaintiff to recover therefor.

**3. SAME—OFFER OF PERFORMANCE.**

Where, before the date fixed for the beginning of plaintiff's services as a baseball player under a contract, and down to the time when all negotiations between the parties were terminated, plaintiff was ready and willing to keep his contract, and in a conversation with defendant's president told him that if defendant would keep its contract he would

start that night for any place directed, but defendant maintained its nonliability, on the theory that plaintiff had been transferred to another club, plaintiff's conduct constituted a sufficient offer of performance to entitle him to recover for a breach of contract.

4. SAME—REDUCTION OF DAMAGES.

Where, in an action for breach of contract for plaintiff's services as a baseball player, plaintiff's obligation to reduce the damages extended over a period of one year only, and all the offers of employment from other clubs tendered involved contracts giving such clubs options for at least two additional years' services, plaintiff was not bound to accept such contracts, but was entitled to accept other employment, though he received much less for his services.

5. SAME—BURDEN OF PROOF.

In an action for breach of a contract for services, the burden is on the employer to show that other and more profitable employment than that in which plaintiff in fact engaged, in order to reduce the damages, had been offered and declined, or might have been found.

6. SAME—LIABILITY—EXTENT—NOTICE TO QUIT.

Where a contract with a baseball player authorized defendant to assign or transfer such player to another club, and also to discharge him on 10 days' notice, and in an action for breach of such contract defendant did not claim that plaintiff had ever been discharged, but had been transferred, it could not claim that, inasmuch as it was entitled to discharge him on 10 days' notice, it was only liable for his salary for such period.

Adams, P. J., dissenting.

Appeal from trial term, Oneida county.

Action by Michael Griffin against the Brooklyn Ball Club. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

The action was brought by plaintiff, a professional baseball player, to recover damages for defendant's alleged breach of a contract whereby it hired him to play ball for the season of 1899, at a salary of $3,500. The appeal involves a consideration of the constitution of the National League of Baseball Clubs, of the form of contracts used by the constituent clubs with their players, and especially of the provisions therein relating to the assignment of contracts and transfer of players from one club to another. This was what was commonly known as the "release" or "sale" of a player.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

John M. Ward, for appellant.
M. W. Van Auken, for respondent.

HISCOCK, J. In 1899 there were twelve different corporations, associations, or individuals engaged, respectively, in managing and conducting a professional baseball club. Each was located in a city by itself. Altogether they constituted what was known as the "National League and American Association of Professional Baseball Clubs." This league and association was governed and controlled by a constitution and agreement. Of the twelve associations, three were: The defendant, engaged in managing and operating a baseball club in the city of Brooklyn; the Cleveland Baseball Company, engaged in a similar enterprise in the city of Cleveland; and the American Baseball and Athletic Exhibition Company of St. Louis, having a club in St. Louis. One Ebbets was president of the defendant, and one Robinson president of each of the other two asso-

ciations. The contract between plaintiff and defendant was entered into in December, 1898. It was expressly made subject to the constitution, playing rules, and rules and regulations of the National League, above referred to, which were made part of the contract. It was in a regular form, adopted for the use of the different clubs and their players. It was quite long, and dealt in much detail and exactness with the relations which were to exist between the employer and the player. It was manifestly framed with great care, and contained many provisions in favor of the baseball association, designed and intended to give it such control over the player as would insure necessary discipline, good conduct, and services upon his part. While some of these provisions seem to be quite rigorous, and rather drastic, they evidently were adopted only after careful consideration, and no claim is made in this case that they were not legal and binding when assented to by the player.

It will only be necessary, for the purposes of this appeal, to refer to the substance of a few of these provisions. Plaintiff's term of service was for the period of six months, commencing April 15, 1899, and ending October 15th of the same year, and during that time he was not to perform duties as a baseball player for any other party or parties, unless the contract with him should be assigned. By implication, at least, the defendant had the right to assign the contract to any other member of the league or association, and, upon acceptance of such assignment by such other club member, said contract was to "continue in full force, with all its terms, provisions, and conditions unimpaired and unaffected by such assignment, binding and obligatory as well upon the party of the second part (plaintiff) as upon the said club member." If the plaintiff at any time during the term of his employment, without the written consent of defendant or its assigns, left the service of it or them, or agreed to perform in the future services for any other club or association whatever, he was subject to expulsion by the defendant or its assigns, or, at the election of the defendant or its assigns, he was subject to prosecution for damages for breach of contract, etc. The defendant had the right, at its option, to renew the contract, "with all its terms, provisions, and conditions, for another period of six months, beginning April 15, 1900, and for a similar period in two successive years thereafter." Under the provisions of the constitution of the league or association already referred to, it was, in substance, provided that any player who while under contract with or reserved by any club belonging to the league, without consent of such club, entered the services of any other club in any capacity, should be liable to expulsion; also that no player, without the consent of the club with which he was under contract or reservation, should enter into negotiations with any other club for future services; also that no player who had been suspended or expelled from any club belonging to the league should at any time thereafter be allowed to play with, or serve in any capacity in, any league club.

To summarize, it will thus be seen that the defendant made a contract with the plaintiff by which it hired him to play ball for six months during the year 1899, at a salary of $3,500, with the option

to it to extend or renew said contract for at least two years more; that it might assign such contract, and plaintiff's services thereunder, to any other club association belonging to the National League, and upon acceptance of such assignment by such other league member said contract became binding upon it and upon plaintiff, and presumptively defendant was released from all obligations thereunder; that plaintiff had no right while this contract existed to engage, or even treat with reference to engaging, his services to any other club without the consent of the defendant or its assigns; and that if he violated this provision he was subject to expulsion, which then debarred him from playing in any club in the National League.

It may be stated preliminarily and generally at this point that defendant's breach of contract, if any, arose through and in connection with its attempt to assign plaintiff's contract to the Cleveland association, and relieve itself from further liability to him.

Plaintiff lived in Utica. March 11, 1899, he received from Mr. Ebbets, the president of defendant, a telegram which read: "You have been released to the Cleveland club. They wish you to report in Cleveland on Monday, to go with team to Hot Springs. Personally I wish you the best of luck in your new position." This was the commencement of the communications between defendant and plaintiff and the Cleveland association, which, it is claimed by defendant, resulted in or evidenced an assignment of the contract between the parties hereto from the defendant to said Cleveland association. The trial court has found that such assignment was made of plaintiff's contract and services by the defendant to said Cleveland association, but has found that said Cleveland association never accepted such assignment in such manner as was necessary to make the terms of the contract between plaintiff and defendant binding upon it or the assignment binding upon the plaintiff. We think this latter finding is justified by the evidence. No transfer of the contract from the defendant to the Cleveland association, nor any resolution or document making or containing any acceptance by the latter of said contract, was put in evidence. There is no evidence of any transaction between the two clubs amounting to such acceptance. Really, the only question is whether there were such communications by the Cleveland club with plaintiff as amounted to such acceptance, if in no other manner, by way of estoppel. This question is to be determined from the telegrams and letters which passed between the different parties, and from the parol testimony given by the plaintiff to Mr. Ebbets. It is evident from these that the Cleveland association did not intend to accept an assignment of plaintiff's contract with defendant in such manner as would bind it to pay him the salary therein provided of $3,500 a year.

The first communication received by plaintiff from anybody purporting to speak in behalf of the Cleveland club was a telegram from Tebeau, its manager, dated March 11th. That said, as bearing upon this subject, "Mr. Robinson has purchased your release from Brooklyn," and requested him to report at Cleveland March 13th. There were various provisions in plaintiff's contract with defendant for his release as distinguished from his assignment, and it may be a fair

- 868     73 NEW YORK SUPPLEMENT    (Sup. Ct.

and 107 New York State Reporter

question whether the language of the above telegram was equivalent to a notice to plaintiff that the Cleveland club had accepted the assignment of him from Brooklyn. But we will assume that possibly it was, and that if plaintiff had immediately acted upon this message, and reported to the Cleveland club, the latter might have been estopped by the telegram of its manager from denying its acceptance of the assignment of plaintiff's contract, and might have been bound to him. Plaintiff, however, did not immediately act upon the telegram and go to Cleveland. He was not obliged to.

If plaintiff had been bound by this purported assignment, there was nothing for him to do but live up to his contract with the Cleveland club as he would have been obligated to do with defendant, and such obligation did not compel him to perform any service or obey any commands until April 15th. Meanwhile it seems that plaintiff claimed some arrearages from the Brooklyn club for prior extra services, and immediately, by his telegram of March 13th to defendant's president, he took the position that these matters must be settled before he left Utica. He did not refuse to recognize any legal assignment, but, in response to continued requests to come to Cleveland and perfect arrangements, he replied that he must close up his matters with Brooklyn first. His telegram of March 15th to Robinson expressed this idea. There is nothing in his contract that bears upon this subject one way or the other. But apparently he was right both in his claim and position, for the Brooklyn club did pay him upwards of $300 on account of this claim, and apparently did acquiesce in his demand that it should be settled before he could be compelled to go elsewhere. The negotiations in regard to this settlement took some time, and before they were concluded it was perfectly apparent, whatever it would have been bound to by its first telegram, that the Cleveland club had not accepted, and did not propose to accept, an assignment of plaintiff's contract, except subject to a readjustment of his salary. The second telegram which its manager, Tebeau, sent upon March 12th, and before plaintiff had made any response either to the Brooklyn or Cleveland club, urged him to come on, and concluded with these significant words: "You wont have any trouble regards to salary, if within reason; so come on." This was before plaintiff had uttered a word upon the subject of salary.

Interspersed with the letters and telegrams between plaintiff and defendant relating to his back claims were letters and telegrams between him and Cleveland relating to his going there, and in which it was still further made evident that any acceptance of the contract covering his services was not only subject to a readjustment, but to a reduction, of his original salary under that contract. In his letter of March 24th to the president of the Cleveland Club, led either by the intimation contained in Tebeau's second telegram, or else by knowledge of some general custom which prevailed of readjusting salaries when players were assigned, he calls attention to the fact that there has been no mention of salary. March 25th he received a telegram from defendant's president asking him to meet the Cleveland president at his office "to arrange contract for the season";

thus again implying that there had been no assignment or acceptance which bound the assignee to the terms of the original contract. March 26th and 27th he received two more communications from the Cleveland president, which expressly make his salary subject to negotiation and adjustment. No stage of negotiations was ever reached between plaintiff and the Cleveland club which did not contemplate or involve this modification of his contract in the acceptance of its assignment by said club. Various proposed contracts were inclosed to him upon that basis.

We are to bear in mind that there is no evidence of a formal or legal acceptance of this assignment as between the two clubs of which plaintiff might take advantage. His only information upon this subject was in the nature of statements by the representatives of the Cleveland club of what it had done or would do in this respect. We are to measure his conduct in refusing to accept and act upon this purported assignment by these statements. From the very first they coupled with the acceptance of his services the idea of a readjustment and modification of salary. Taken together, they, the only means by which he could prove an acceptance of his contract by the Cleveland club, said, in substance: "We have purchased your release. Come to Cleveland, and we doubtless can make a satisfactory adjustment of your salary." This did not amount to or prove such an acceptance of the obligations which defendant had assumed towards him as plaintiff was bound to recognize. Unless the Cleveland club did accept the contract made by the Brooklyn club unqualifiedly and in all of its provisions, including the one relating to salary, plaintiff was not bound by such assignment.

It is not necessary in this case to hold that a player who was the subject of one of these transfers would be entitled to have a formal written acceptance of the assignment before he could be compelled to assent to it. We have no doubt that upon request he would be entitled to reasonable assurances and proofs that the transfer had been made and adopted in such way as would bind the new club, and secure from it a full performance of his original contract. But certainly, if a player should adopt and act upon an assignment of his contract by one club with full knowledge that the acceptance by the other club was qualified and subject to an adjustment of salary, he would undoubtedly do so at the risk of his legal rights with the first club. Such conduct upon his part under one of these contracts would, or at the very least might, so far release his original employer that if the purchasing club finally refused to give an equal salary he would be without remedy. Plaintiff was not bound to incur any such peril as this, and, in our judgment, was justified in refusing to recognize or be bound by the assignment in question.

It is to be remembered, in considering the offers made to plaintiff upon this subject of salary, both by the Cleveland and St. Louis club hereinafter referred to, that a contract would hold him for three years, and that, while supplementary or "side" offers were made outside of the written contract which might have made his salary for the first year $3,500, they did not apply to or cover the remaining years for which he could be held. On or about March 28, 1899, the

negotiations with reference to an assignment of plaintiff's contract with defendant were varied by the receipt of a letter from Mr. Robison, as president of the St. Louis Baseball Association, which, among other things, stated, "You have been released by the Cleveland Baseball Co. to the American Baseball and Athletic Exhibition Co. of St. Louis, Mo., of which I am president;" and also, "We want you, of course, to play with the St. Louis club;" and directed plaintiff to report at St. Louis at once. Negotiations with plaintiff upon the theory of this new and second assignment, in the form of correspondence and of interviews, continued into June, when they finally were broken off or terminated. No evidence was produced either to plaintiff at the time or upon the trial of any formal or legal transfer of the contract from the Cleveland to the St. Louis association. The only proof upon this subject consisted of statements like those just quoted, to the effect that such a transfer had been made. This alleged assignment of plaintiff's contract, assuming that one was made, was subject to a similar modification, which accompanied the original purported assignment from the Brooklyn to the Cleveland association, namely, a material reduction of his salary. In addition to this, it was subject to another substantial infirmity.

We have approved the finding of the trial justice that the Cleveland association never properly or sufficiently accepted from the Brooklyn association the transfer of plaintiff's contract. That being so, it was in no position to make an assignment of the contract from itself to the St. Louis association. The defendant was in no binding way a party to this second assignment. Until the assignment of its contract with plaintiff had been accepted by the Cleveland club, it had not lost its right to plaintiff's services, and under his contract with defendant, and under the constitution and by-laws of the National League, the latter had no right to negotiate with any other club for his services. If he had signed a contract with the St. Louis club upon a purported transfer before the defendant had in fact parted with its contract with him by reason of a sufficient acceptance by the Cleveland club of the assignment, he would have been liable to expulsion and blacklisting.

We come now to the characterization of the defendant's attitude towards plaintiff and its contract with him, as evidenced by its claim and conduct in connection with this purported transfer. We think they sufficiently indicate a repudiation of any obligation to him under its contract and a breach by it thereof. It assumed, and through all of the negotiations heretofore referred to maintained, the position that it had transferred its contract with plaintiff, and that he had become bounden to another club. In a letter of March 24th its president said: "I am very sorry that things came so that your connection with the Brooklyn club was severed. * * * Trusting your career with the Cleveland club will be a long-continued success, * * * I remain," etc. In an interview with plaintiff held at Utica in April, defendant's president took the position that plaintiff's contract had been transferred to the Cleveland club, and that all relations between him and the defendant had been severed by such transfer. In other words, defendant, planting itself squarely upon the pro-

visions of the contract with it that it might make a transfer thereof, claimed that it had made such a transfer and was relieved of liability. There having been, as we hold, no legal or sufficient transfer and acceptance, such claim and conduct upon the part of the defendant amounted to an unlawful refusal to fulfill its contract and to a breach thereof.

Defendant urges that plaintiff did not make a sufficient offer of performance, and that he did not make sufficient efforts to secure other employment and reduce his damages. There is ample evidence to sustain the findings of the trial justice against the first claim. The testimony indicates that from a date before that fixed for the commencement of his services down to June 17th, when all negotiations and relations between the parties seem to have ended, plaintiff was ready and willing to fully keep his contract with defendant. In his conversation with defendant's president at Utica, April 26th, plaintiff told the latter that if defendant would keep its contract with him he would start that night for any place directed. During all of this period defendant was maintaining the position that it had assigned him and his services, and therefore, impliedly at least, that it had no right to or occasion for the latter, and plaintiff was engaged in conducting and considering negotiations and demands for services elsewhere, which were set in motion by defendant. We must take into account the attitude and conduct of the opposite party in determining how far it was necessary for him to go in the way of evidencing his willingness to perform or in making a tender of performance. The law does not require one to go through barren forms of offering to render services under a contract which the opposite party has repudiated and acceptance of which services has been refused. It does not require one to make a tender of performance when there is a willingness and ability to perform, and actual performance has been prevented or expressly waived by the party to whom performance is due. We think that plaintiff was not guilty of any shortcomings, either in readiness to perform or in tender of performance. Howard v. Daly, 61 N. Y. 362, 19 Am. Rep. 285; Terry v. Horne (Sup.) 13 N. Y. Supp. 353.

Upon the second point of plaintiff's obligation to reduce damages by accepting other employment, it might seem, at first, that he was derelict in not accepting the offer of the Cleveland or St. Louis clubs for this purpose. The salary offered by each was much larger than that earned in the employment which he did accept. Some other considerations, however, must be borne in mind here. While defendant, under the contract, had a right to reserve and employ plaintiff for at least two years after the first one, this was entirely optional with it. He could not hold it against its will for but one year. Upon its breach of contract, therefore, his legal claims were for that period, and his obligations were limited to reducing damages for simply that one year. All of the offers by the other clubs involved contracts containing provisions giving them this same right of reserving and holding him for at least two additional years at a reduced salary. He was not bound to accept the proffered employment under such circumstances. The only other employment opened to him, so

far as the evidence discloses, was that which he accepted in the brewery in Utica in May.

The plaintiff was not bound to show as part of his case that other and more profitable employment had been sought and could not be found. The burden rested upon defendant to show that such employment had been offered and declined, or might have been found. Merrill v. Blanchard, 7 App. Div. 167, 40 N. Y. Supp. 48; Costigan v. Railroad Co., 2 Denio, 609, 43 Am. Dec. 758; Howard v. Daly, supra.

The contract between the parties contained a clause providing that the defendant might, "at any time after the beginning and prior to the completion of the period of this contract, give the party of the second part [plaintiff] ten days' written notice of its option and intention to end and determine all its liabilities and obligations under this contract, in which event, upon the expiration of said ten days, all liabilities and obligations undertaken by said party of the first part or its assigns" should at once "cease and determine." It is urged that, because defendant under this clause might have discharged plaintiff upon 10 days' notice, it cannot be held liable upon its breach for damages for more than that period. Watson v. Russell, 149 N. Y. 388, 44 N. E. 161. We are unwilling to adopt this view. We are not interested in what defendant might have done under this contract, but in what it did do. In the first place, the clause in question, by its terms, is limited to a discharge of the player during the playing season, which did not begin until April 15th. Defendant's breach of contract, which it claims was equivalent in its effect to a notice of discharge, was probably complete in March, when it claimed to have made an assignment of plaintiff's contract to the Cleveland club, which bound him, and relieved it from all further liability. In the second place, the clause in question manifestly contemplates an absolute release of the player, and a termination in all respects of the contract. That is not this case. Defendant has never claimed but has always repudiated the idea that it had canceled or otherwise terminated the contract with plaintiff, and in that manner become relieved of its obligations. Its very claim of relief from liability is based upon the contract, and not upon its cancellation. It says that by virtue of clauses in the contract still in force, it transferred the same in such a manner as binds plaintiff to look elsewhere for compensation or damages, and excuses it from responding to any such demand. We do not think the clause fits this case.

We are unable to formulate any theory or view of the evidence in this case which permits us to measure the plaintiff's damages by the amount which the learned trial justice awarded to him of $2,266. As we have already indicated, plaintiff was entitled to hold defendant for only one year under its contract, although it had an option on him for more. Presumptively, his damage by reason of defendant's breach of contract was the amount of $3,500, stipulated to be paid. Merrill v. Blanchard, supra. This, however, was, of course, subject to reduction by the amount of wages which he earned during the period of six months covered by his contract. He entered upon the

employment described in the evidence in May, and his wages were $20 a week. This would make his total earnings during the period in question about $440. His damages would therefore be $3,500 and interest, less $440 and interest, or in the neighborhood of $3,000 and interest. As this view would have entitled plaintiff to a much larger judgment than he has obtained, and as he has taken no appeal, we are able to affirm the judgment upon this point. Whatever error was committed was in favor of the defendant and appellant, and not against it. The judgment appealed from should be affirmed, with costs.

Judgment affirmed, with costs. All concur, except ADAMS, P. J., who dissents.