BASEBALL PLAYERS' FRATERNITY, Inc., v. BOSTON AMERICAN LEAGUE BASEBALL CLUB. (No. 6771.)

(Supreme Court, Appellate Division, First Department. February 5, 1915.)

1. MASTER AND SERVANT (§ 3*)—BASEBALL CONTRACTS—CONSTRUCTION.

Where a contract between a baseball club and a player contains coercive and harsh provisions bearing upon the player, it will be construed by the court liberally in his favor.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 2, 3; Dec. Dig. § 3.*]

2. MASTER AND SERVANT (§ 73*)—BASEBALL CONTRACT—WAIVER OF BREACH—REASSERTION OF RIGHTS UNDER.

Plaintiff's assignor, a baseball player, contracted to play with the Boston Club of the American League at a salary of $400 per month for the season of 1912. He played for the club a short time, and it then sent him to Jersey City; he understanding that it was an "optional release" and that he would be recalled to Boston in a few weeks. The Jersey Club required him to sign a contract with it, however, and later the Boston Club "sold" him to Denver; he refusing to report for duty, since that club offered only $250 a month in place of the $400 which both Boston and Jersey City had contracted to pay him. He continued to report to the Boston Club daily for duty through the season, not being allowed to play. He then assigned his claim for breach of contract against the Boston Club to plaintiff, which sued. *Held* that, by reasserting a right to dispose of his services to Denver after he had signed a contract with Jersey City, the Boston Club waived its right if any to regard his signing with Jersey City as a release of itself from liability to him on the original contract of hiring.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 90–102; Dec. Dig. § 73.*]

3. MASTER AND SERVANT (§ 80*)—BASEBALL CONTRACT—PERFORMANCE OF CONDITIONS PRECEDENT TO RELEASE—BURDEN OF PROOF.

Where the contract of plaintiff's assignor, a baseball player, with defendant ball club, required that all major league clubs should file "waivers" of their right to his services under the "National" agreement of organized baseball before defendant could rightfully "sell" him to a minor league club, and the player was sold to such club and the action was claimed to breach his original contract with defendant club, the burden

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of proof is on the club to show that the waivers required by the terms of its contract with the player have been filed, and, in the absence of evidence, there is no presumption to sustain such a burden.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 107–127; Dec. Dig. § 80.*]

4. MASTER AND SERVANT (§ 70*)—BASEBALL CONTRACT—CONSTRUCTION.

Where a contract between a player and a baseball club, on account of the harshness of its terms against him, must be construed in favor of the player, in the absence of express authorization in the contract the club cannot transfer his services to another club at a lesser salary, although conditions precedent to the club's right to transfer at all have been performed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 82–86; Dec. Dig. § 70.*]

5. ASSIGNMENTS (§ 23*)—BREACH OF CONTRACT OF HIRING BY BASEBALL CLUB —ASSIGNMENT OF PLAYER TO PLAYERS' FRATERNITY.

An assignment of a claim against a baseball club by a player, for breach of a written contract of hiring, made to a membership corporation composed of ball players and formed to protect their interests, is valid.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 40, 41; Dec. Dig. § 23.*]

McLaughlin and Dowling, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by the Baseball Players' Fraternity, Inc., against the Boston American League Baseball Club. Judgment dismissing the complaint, and plaintiff appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

David L. Fultz, of New York City, for appellant.
John Conway Toole, of New York City, for respondent.

LAUGHLIN, J. This is an action on an assigned claim of one Kurt M. Hageman for compensation for services under a written contract of employment executed by the defendant with him on the 18th day of September, 1911, by which he was employed to perform "such duties pertaining to the game of baseball" as defendant might require of him during the American League season for the year 1912, which embraced the period of six months from April 15, 1912, to October 15, 1912, and for which it agreed to pay him $400 per month. The defendant paid this compensation to Hageman for the first month; and then, by its direction, he reported to and played with the Jersey City Club until the 23d day of June, and was paid by that club at the same rate for that period. Hageman was required to and did sign a contract with the Jersey City Club, and the nonsuit was granted on the theory that the defendant thereupon was released from all liability under its contract with him. The action is brought to recover the compensation provided by the contract for the period from June 23 to October 15, 1912.

[1] Hageman contracted with the Denver Club of the Western League as a pitcher for the baseball season of 1911. The Denver Club belonged to a minor league known as the "class A" league of the Na-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

tional Association of Professional Baseball Leagues. The National League and American Association of Professional Baseball Clubs and the American League of Professional Baseball Clubs were major leagues of the same class; and each of them was composed of several clubs, each having a professional baseball team. There was a formal agreement in writing between the two major leagues and the National Association of Professional Baseball Clubs, and it will be referred to as the "National Agreement." The parts of that agreement deemed by counsel material to the issues were offered and received in evidence and are printed in the record. Every player who obtains a contract of employment from any club is obliged to agree to be bound by the provisions of the National Agreement. That agreement, among other things, purports to regulate the "purchase" and "sale" between the clubs of the players as "property." The original contract between a player and a club is for the ensuing season; but provisions of the National Agreement, which become part of the contract, purport to mortgage the services of the player to the club or to the other clubs, subject to said agreement, for the entire period of his usefulness as a player, under pain of being precluded from obtaining employment from any of said clubs under any contract unless voluntarily and unconditionally released. The provisions of the National Agreement are designed to control the disposition of the players between the clubs composing the leagues, as chattels are controlled by purchase and sale. The players are not consulted and have no voice in the matter, and are described as "the property" of the club by which they are employed. No provision is made for maintaining their salaries at the original figures or for increasing or decreasing them. It is expressly provided in the contract of employment that it is understood and agreed between the parties thereto "that they will respect and abide by the constitution, rules and edicts" of the league to which the particular club employing the player belongs, "subject only to an appeal for final adjudication to the National Commission," and that they will "also respect and abide by all of the provisions and conditions of the National Agreement and rules of the National Commission." By the National Agreement, to which reference has been made, and to the provisions of which a player becomes obligated by his original contract with a club, it is expressly provided that a major league club "may at any time purchase the release of a player from a minor league club, to take effect forthwith, or at a specified date, provided such purchase is recorded with the secretary of the Commission and secretary of the National Association for promulgation within five days of the date of the transaction."

Pursuant to this provision of the National Agreement, the defendant, which is one of the clubs forming the American League, and therefore a major league club, purchased the release of Hageman from the Denver Club prior to the close of the season of 1911, and thereafter it made the contract, upon which this action is based, with Hageman. Another onerous provision of the contract which Hageman was obliged to make with the defendant, or suffer the penalty of being suspended without pay and without the right to negotiate a contract for employment with any club which was a party to the National Agreement, is

one by which the defendant was at liberty at any time, "after the beginning and prior to the completion of the period" of the contract, to terminate all liability under the contract on 10 days' notice in writing to him; but he had no option to terminate his liability under the contract at any time or in any manner. A player originally voluntarily becomes obligated; but it is manifest that many of the provisions to which he becomes subject are coercive and are so drafted that they may be enforced and applied arbitrarily, as has been done in the case at bar. In so far therefore as the provisions of such a contract are sustained as valid, they should be construed liberally in favor of the player.

By the contract the plaintiff's assignor became obligated to report for practice and to participate in exhibition games as might be required for a period of 30 days prior to the 15th of April, 1912, at such place as defendant might designate, and pursuant to its direction he reported at Cincinnati in the fore part of March and performed such duties there and at Hot Springs, where the club went for practice, as were required of him. He then accompanied the team to Boston and remained with it until May 15th, and in the meantime participated in two official league games as a pitcher. On the morning of that day, while the club was practicing at Boston, Mr. McAleer, the president of the defendant, said to Hageman:

"I want you to go over to Jersey City. They want a pitcher over there, and Mr. Breen is here, and I want you to go back with him."

To which Hageman replied:

"Mr. McAleer, I would rather stay here. It is every ball player's ambition to get to the city here at the big games."

Whereupon McAleer said:

"We want you to go over there for a short period," and "then you will come back here. Every one that works for me must pitch, and I want you to go over there and pitch."

Hageman then went to Mr. Stahl, who was the manager of the team, and reported the conversation he had had with McAleer, and said to Stahl, "Supposing I go over there, shall I have to sign a contract?" and thereupon Hageman drew his attention to the fact that the constitution of the league required that he sign a contract or the games could not go on record, and Stahl said, "If you must sign a contract, be absolutely sure that the terms are just the same as the contract that you signed with us," and thereupon and on the same day he went to Jersey City and reported to the Jersey City Club for duty and was required to sign a "regular International League contract," of which he did not receive a copy, by which he was to receive a salary in the same amount as he was receiving from the defendant. That contract is not in the record, and the only evidence with respect to it is that given by Hageman, who at first testified that it provided that he was to play with the Jersey City Club for the season of 1912. That league season was between two and three weeks shorter than the defendant's season. Hageman afterwards testified that he understood that he was released by the defendant to the Jersey City Club under an "optional release"; that no period was specified in the contract which

he signed with the Jersey City Club; that he was "under the impression" that he was to return to the defendant "within a period of six or eight weeks"; that "Manager Stahl and President McAleer both said that I would be over there only a few weeks, and I was only loaned there to help the Jersey City Club out;" that otherwise he did not know under what conditions he was released or under what agreement between the defendant and the Jersey City Club; and that his services were transferred, but that he saw no papers. Hageman further testified that he played with the Jersey City Club until the evening of June 23, 1912, when the secretary of the club delivered to him a check for his services and made a statement to him, which was not received in evidence, but which evidently related to his transfer to the Denver Club, for he wired McAleer regarding his transfer to that club, and received a telegram from McAleer in reply as follows:

"Jersey City did not want you so have given Denver option on you. You will have to make your terms with Denver."

Hageman then wired the Denver Club, asking for particulars regarding his transfer, and he received a telegram in reply from the president of the Denver Club as follows:

"Your services purchased from Boston on optional agreement will give you two hundred fifty per month report immediately at Topeka not later than Monday. Buy your own transportation and we will refund."

He thereupon wired the Denver Club that the terms were unreasonable and that he could not accept them, and he received a reply from the president of the club as follows:

"Best proposition I will make you is two hundred fifty per month when you are ready to report wire me for transportation and will send same or you can furnish your own and we will refund. You are hereby notified that you are suspended until you accept terms and report to us."

He then wired McAleer, but he was not permitted to state the contents of the message, and they were not shown. He received a reply, however, to that message from the president of the defendant as follows: "You must do business with Denver as I have turned you over to them." Hageman then went to Boston and called on McAleer, and said, "I do not like the idea of going to Denver, because it is a lower league," and that the terms were unreasonable, and that he would not go unless his contract with respect to salary was kept and the defendant made up the difference, which McAleer refused to do, and that he then informed McAleer that there was a manager in the International League who would pay him the salary he was receiving from the defendant and had authorized him to say to McAleer that he would also pay as much or more than the defendant was to receive from the Denver Club, and that McAleer replied:

"I do not care. That is the hard luck of baseball. You must go to Denver, or wherever I send you. * * * You have to go where we send you. * * * I won't make up the difference in salary. You will have to go just the same."

McAleer informed Hageman that the Denver Club was giving $500 for his optional release, but that the defendant would release him to another club if he could find some manager who would pay $1,000

151 N.Y.S.—36

more than the Denver Club was giving. Hageman says that he found such a manager who would pay him the same salary as he was receiving from the defendant, and would give the defendant $1,500 for his release, and so stated to McAleer, who then refused "to live up to the proposition." Hageman then informed McAleer that he would remain there and report for duty and hold defendant to its contract, to which McAleer replied, "You are foolish, my boy, you won't get a cent." Hageman reported to the club daily for duty until the close of the season, and subsequently assigned his claim for services to the plaintiff, and this action was brought.

After the defendant undertook to transfer Hageman to the Denver Club, Hageman communicated by telegram with the National Commission with a view to obtaining redress; but neither the date nor the contents of his telegram were shown. The chairman of the Commission—whether in reply to his telegram or acting on other information does not appear—wired Hageman under date of July 9th, addressed to him care of "Boston Red Sox" (by which name defendant's team was known) as follows:

"Boston Red Sox purchased your release they could not turn you over to Denver unless all major league clubs waived claim they acted within their rights the Denver club has a right to regulate your salary you cannot expect a major league salary in class A co."

Hageman then wrote the National Commission under date of July 15, 1912, setting forth his claims in full and in substance as herein recited, and appealed to the Commission to protect him against what appeared to him to be a conspiracy to prevent his obtaining the salary to which he was entitled under his contract with the defendant, and which other clubs were willing to pay. He received a letter from the National Commission under date of July 19th, which is not in the record, to which he replied at length on July 29th, emphasizing the injustice to which he was being subjected, and in that letter he alluded to a claim, evidently made by the chairman of the National Commission, that the waivers required had been obtained by defendant; but he did not admit the correctness of the claim, and it does not appear that he had any information on the subject other than that communicated by the letter to which his was a reply and the telegram already quoted. On August 13th he received another telegram from the chairman of the Commission as follows:

"My letter to you under date of July 19th relative to matter you have pending before Commission has been unanimously indorsed by all of the members thereof and you should act accordingly."

It was expressly provided by rule 34, forming part of the National Agreement, that a player purchased by a major league club could not be transferred to any minor league during the year following such purchase—

"unless all major league clubs in both the National and American League shall have waived claim to his services and if such waiver cannot be secured then the player shall either remain with the club having purchased him or be transferred to the club refusing to waive claim to him by sale to such club; and in such instances, the purchase price shall be the same as now fixed by the National and American Leagues in like cases, to wit, $1,500."

This provision applied to the case at bar, for Hageman had been purchased by defendant from a minor league club the year before. There is no evidence that the defendant obtained waivers from any or all of the clubs from which it was required to obtain them before it could transfer plaintiff to a minor league club. Of course, the statement in the telegram from the chairman of the Commission to the effect that the defendant was acting within its rights is not proof of the fact that it had obtained waivers.

[2, 3] According to the testimony in this record, during all the negotiations the claim upon which the plaintiff was nonsuited and upon which the respondent attempts to sustain the judgment, namely, that the defendant was released by Hageman's signing the contract with the Jersey City Club, was never suggested. It is manifest that that claim is untenable. The defendant assumed to reclaim Hageman from the Jersey City Club, or to accept him back, and recognized that its contract with him continued in force, and assumed to dispose of his services by virtue of its rights, erroneously asserted under said contract, to the Denver Club. There is no presumption that the defendant obtained waivers from all of the clubs from which it was required to obtain them as a condition precedent to its right to transfer the plaintiff to a minor league club, and the burden was upon the defendant of showing that it had duly complied with the rule, if it claims that as a defense to the action for Hageman's services.

[4] The contract as presented by the record did not expressly authorize the defendant to sell or transfer the services of Hageman to the Denver Club or any other club at a lower salary, even though the conditions precedent to its right to demote him were complied with by obtaining waivers from the other major league clubs; and the rule of construction which, as already observed, should prevail, requires that the provisions of the contract with respect to the sale or transfer of the player's services to another club during the particular season for which he is employed should be upon the same salary.

[5] It was contended on the trial, and is suggested here, but not urged, that the assignment to the plaintiff was void. The plaintiff is a membership corporation composed of baseball players, and it was organized to protect their interests and further the interests of organized baseball. The claim has been assigned in writing in due form, and there can be no question but that the defendant will be protected by any recovery in this action. There is therefore no merit in the point.

It follows that the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event.

HOTCHKISS, J., concurs.

INGRAHAM, P. J. I concur in the reversal of this judgment. By the contract between the plaintiff and the defendant, the defendant agreed to pay to the plaintiff the sum of $400 per month during the period covered by the contract "unless this contract should be terminated by the first party" (the defendant), the plaintiff agreeing "to perform, for the party of the first part and for no other party during the period of this contract unless with the consent of the said party, such

duties pertaining to the game of baseball as may be required of him by said party of the first part at such reasonable time and places as said party of the first part may designate for the American League season for the year 1912, beginning on or about the 15th day of April, 1912, and ending on or about the 15th day of October, 1912, which period of time shall constitute the life of this contract unless sooner terminated in accordance with the further provisions thereof." The contract further provided for the termination of the contract upon certain conditions, one of which was that the contract could be terminated by the defendant giving the plaintiff 10 days' written notice to end and determine all its liabilities and obligations under the contract. The plaintiff entered on the performance of the contract and continued under it, receiving the compensation provided until May 15th, when the president of the defendant told the plaintiff that he wished him to go to Jersey City and play with that club. The plaintiff protested, but the defendant's president insisted, and the plaintiff finally acquiesced; but it was under the promise of the defendant's president that the plaintiff should be recalled to the defendant club. The plaintiff was told to sign a contract with the Jersey City Club, but that contract should be upon the same terms as the plaintiff's contract with the defendant. The plaintiff followed these directions and went to Jersey City and signed such a contract with the Jersey City Club, which contract, however, did not continue during the whole of the period during which the plaintiff's contract with the defendant club was to continue. The Jersey City Club terminated the plaintiff's service with it, when the plaintiff returned to defendant and offered to continue its service with it, which defendant refused. The plaintiff has been defeated upon the ground that by signing such contract with the Jersey City Club he abrogated his contract with the defendant. The plaintiff's contract with the Jersey City Club, however, was executed by direction of the defendant and was not to terminate the contract between the plaintiff and defendant but in execution of it.

Under such circumstances, I do not think that the contract between the parties to this action was terminated. It was in accordance with the provisions of the contract that the plaintiff was directed to play for the Jersey City Club during the period wherein it required his services, and the signing of the contract with that club was by direction of the defendant. When the Jersey City Club dispensed with the plaintiff's services, he was entitled to the benefit of his contract with the defendant, and, after the Jersey City Club refused further to employ the plaintiff and to pay the sum that the defendant had agreed to pay for the services of the plaintiff, I think the obligation of the defendant to continue to pay for such services as the contract required him to perform revived and continued during the terms of the employment. The execution of the contract by the plaintiff with the Jersey City Club as enforced upon him as an obligation under his contract with the defendant could not therefore be a breach of the plaintiff's contract or justify the defendant in repudiating its obligation to pay under the contract. It is perfectly apparent that it was so considered by both parties; for, when the plaintiff desired a release from his obligations under this contract after the Jersey City Club had dispensed with his services, the

defendant still insisted that the contract was in force, refused to grant a release, and thus prevented the plaintiff from obtaining other employment which would have secured him that payment of the compensation that the defendant had agreed to pay. Nor was there anything in this contract that justified the defendant in compelling the plaintiff to accept employment with the Denver Club at a salary less than that which the defendant had agreed to pay.

I therefore concur in the reversal of this judgment.

McLAUGHLIN, J. (dissenting). The contract under consideration is one-sided and apparently drawn in the interest of the defendant, without very much regard to the interest of the plaintiff's assignor. But it is a contract nevertheless. Persons competent to contract can make such agreements as they see fit, so long as the same are not opposed to good morals, against public policy or contrary to law. Courts do not make contracts. Their powers are limited to construing them. It is not claimed that the contract is invalid, and therefore it should be enforced according to its terms. But I am unable to concur in the construction put upon it by Mr. Justice LAUGHLIN. There is no express provision authorizing the transfer of a player from one club to another without the player's consent. It is true it contains a recital that the parties agree to "respect and abide by all of the provisions and conditions of the National Agreement and rules of the National Commission." The National Agreement and rules of the National Commission, as I understand them, regulate the transfer of a player among certain clubs, but do not give to such clubs the absolute right thereto, unless the player consents. If this be the correct construction, then Hageman, when he was told to go to the Jersey City Club, could have refused to do so unless that club accepted the contract with the defendant, or entered into another one with him on as favorable terms. He consented, however, to his release to the Jersey City Club and signed a contract with it at the same salary and covering substantially the same period. When he. entered into that contract, he thereby gave up any right he had to enforce his contract with the defendant. Griffin v. Brooklyn Ball Club, 68 App. Div. 566, 73 N. Y. Supp. 864, affirmed 174 N. Y. 535, 66 N. E. 1109. But it is suggested in this connection that the Boston Club released Hageman to the Jersey City Club under an optional contract with it by which his return could be had. Assuming this to be so, as between the Boston Club and the Jersey City Club, Hageman could have refused to recognize that agreement if he chose to do so, and looked to the Jersey City Club for the complete performance of its contract with him.

A majority of the court is of the opinion that, by virtue of the rules of the National Commission, a player may, subject to those rules, be transferred from one club to another, regardless of his will in the matter. Under this construction, it becomes important to consider the alleged optional contract between the Boston and Jersey City Clubs. In view of the contract which Hageman signed with the Jersey City Club, the burden of proving that his release was optional and not absolute was upon the plaintiff. Rule 31 of the rules of the National Commission is as follows:

"Whenever a major league club releases a player to a National Association Club, under an agreement to secure the return of such player, or any other agreement other than an outright release or sale, such agreement shall not be considered binding unless a copy thereof shall have been first filed with and approved by the Commission, and all such agreements, when approved by the Commission, shall be promulgated by the secretary in condensed form. * * * "

It was, then, not only necessary for the plaintiff to establish an optional agreement between the Boston and Jersey City Clubs, but it was essential that it appear that such agreement had been filed and approved by the Commission. The alleged optional contract was not produced at the trial, and the only evidence in support of such contract is that Hageman was assured he would return to the Boston Club later in the season, together with the inference which may be drawn from the defendant's asserted control over Hageman after his release by the Jersey City Club. Whatever arrangement resulted in the surrender of Hageman by the Jersey City Club, the plaintiff failed to establish a contract enforceable under the rules of the National Commission, and it is only such contracts which can, by any possible construction, be incorporated in the contract between Hageman and the Boston Club.

For these reasons, I dissent from a reversal of the judgment, and think the same should be affirmed.

DOWLING, J., concurs.