Paul J. Widlitz, J.
In this complaint, plaintiff seeks omnibus relief both legal and equitable.
*629 In the first two causes of action, plaintiff seeks to recover from the T. Y. Development Corp. unpaid back salary accruing under the terms of a written contract of employment together with damages for his wrongful discharge. The third cause of action attributes plaintiff’s wrongful tortious discharge to the defendant Zatzkin personally and seeks compensatory and exemplary damages from him. Lastly, the plaintiff projects himself as the true owner of an invention allegedly transferred to the defendant corporation for a consideration which has never materialized and the aid of equity is sought in restraining further ‘1 exploitation ’ ’ of the invention, declaring the plaintiff to be the true owner and granting resultant damages.
The T. Y. Development Corp. concedes liability for accrued wages, and, although the amount demanded is in issue, this court finds the amount to be $2,100. In assailing the allegation of wrongful discharge, the defendants assert that the plaintiff has refused to assign to the corporation the invention known as “ Colorgrams ” as dictated by the existing employment contract and further that the plaintiff sabotaged an opportunity for the corporation to sell the invention.
Paragraph 9 of the employment contract provides as follows : ‘ ‘ 9. The Employee agrees promptly to disclose to the Company all improvements, developments or inventions heretofore or hereafter made or conceived by him while employed by the Company or any of its subsidiaries, within the existing or contemplated scope of the business conducted by any of them during such period, and the same shall be the exclusive property of the Company. At the request and expense of the Company, the Employee will, at any time and from time to time, execute any and all assignments and applications or other instruments that may be deemed necessary or advisable in order to apply for or obtain letters patent in the United States or in other countries covering such improvements, developments or inventions or in order to vest title therein in the Company. ’ ’
For one year prior to December, 1961, the plaintiff had been employed by the T. Y. Development Corp., then an individually owned corporation, under an oral arrangement at a salary of $10,000 per year. When the corporation went “ public,” a five-year written contract was initiated employing plaintiff as the general manager with executive duties at an annual salary of $20,000.
The testimony amply establishes that the idea of “ Color-grams ” had been conceived by the plaintiff prior to his employment. Originally the T. Y. Development Corp. had been solely engaged in the distribution of TY knobs, but, when the position *630 of the corporation became somewhat precarious, the plaintiff suggested his Colorgrams program. The corporation adopted it and proceeded to invest approximately $200,000 in development. Although the plaintiff had conceived the idea, the practical embodiment of the concept required additional and substantial effort and money. In November, 1962, after extensive work in bringing Colorgrams to fruition, the plaintiff at corporate expense made the requisite patent application, and, although requested to assign these patent rights to the corporation, he refused. This refusal allegedly stemmed from the corporate refusal to give plaintiff 5% of the gross sales and 50% of the stock in a subsidiary corporation. This arrangement, plaintiff claims, had been orally promised by Mr. Zatzkin subsequent to December, 1961, the date of the written contract of employment, but is not adequately borne out by the proof, and the minutes of the corporation make no mention of it.
The contract was not one where the plaintiff was employed specifically to invent or to invent a particular thing. Were such a specific intent spelled out in the employment contract, then this court might reach a different conclusion. The plaintiff had been employed to “ continue to act as Vice President and General Manager of the Company, and to perform such duties as are customarily performed by the individual holding such office and such additional duties of an executive nature as may be assigned to him from time to time ”. Cornell had not been employed to invent.
When one is employed to invent, or, to invent a particular item, and succeeds during his term of employment, he is bound to turn over the invention to his employer. This is so because in inventing he is fulfilling his contractual obligations (United States v. Dubilier Condenser Corp., 289 U. S. 178); he has sold in advance to his employer the future fruits of his inventive powers (Solomons v. United States, 137 U. S. 342).
But such is not the situation here. The courts of this State and the United States Supreme Court have consistently maintained, ‘ ‘ that where a servant, during his hours of employment, working with his master’s materials and appliances, conceives and perfects an invention for which he obtains a patent, he must accord his master a non-exclusive right to practice the invention ” or what is commonly termed a shop right (United States v. Dubilier Condenser Corp., supra; Solomons v. United States, supra; Cahill v. Regan, 5 N Y 2d 292). “ So, also, when one is in the employ of another in a certain line of work, and devises an improved method or instrument for doing that work, and uses the property of his employer and the services of other *631 employes to develop and put in practicable form his invention, and explicitly assents to the use by his employer of such invention, a jury, or a court trying the facts, is warranted in finding that he has so far recognized the obligations of service flowing from his employment and the benefits resulting from his use of the property, and the assistance of the coemployes, of his employer, as to have given to such employer an irrevocable license to use such invention.” (Solomons v. United States, supra, p. 346.) Although defendant has not claimed such a right or urged it upon this court, a court of equity can properly consider it under its broad discretion in deciding the equitable issues (Cahill v. Regan, supra).
The plaintiff herein does not dispute the fact that T. V. Development Corp. paid for the needed materials, secured the necessary employees, supplied the requisite professional drawings and generally provided all of the expenses in developing and marketing the product. Under such circumstances, the defendant T. V. Development Corp. is entitled to manufacture and sell Colorgrams under the law of shop right even though title is rightfully vested in the plaintiff.
Since the plaintiff properly refused to assign the patent to his employer, his discharge was wrongful, and there existed no other plausible reason for discontinuing his employ.
Damages for wrongful discharge are prima facie the entire amount of compensation due for the balance of the employment contract less what the employee could have reasonably earned (Howard v. Daly, 61 N. Y. 362; Goldman v. City Specialty Stores, 285 App. Div. 880). Any other doctrine would give the employee full wages while living in ‘ ‘ voluntary idleness ’
Soon after his dismissal from employment, plaintiff formed another corporate entity for the purpose of designing, producing, and marketing products and components for the electronic industry. This business has not fully blossomed forth as yet, but the plaintiff, by embarking thereon, has removed himself from the employment field. There has been no evidence projected by the plaintiff establishing what his income might be from this new business venture (Milage v. Woodward, 186 N. Y. 252), and in granting damages the court is held to that date when the plaintiff effectively removed himself from available employment by initiating his new corporation, i.e., December 2, 1963. So limited, plaintiff has been damaged to the extent of 13 weeks’ salary amounting to $5,000, along with the sum of $2,100 due him for the period prior to his discharge (Townsley v. Niagara Life Ins. Co., 218 N. Y. 228).
*632 Proceeding now to the claim against Zatzkin individually, it is the general rule that if one maliciously interferes with a contract between two parties and induces one of them to break that contract, to the injury of the other, the injured party can maintain an action against the wrongdoer. The gravamen of the tortious act is the deliberate intent to interfere without justification (Lamb v. Cheney & Son, 227 N. Y. 418). Although this court has found the plaintiff to be wrongfully discharged by the corporation, the evidence is insufficient to warrant a holding that the defendant, Zatzkin, acted wrongfully and intentionally without just cause or excuse and solely for the purpose of and with the intent to injure plaintiff. He may not have acted reasonably, but this court feels that the evidence sustains a holding that he acted with some justification for what he thought were the best interests of the corporation and in the protection of equal or superior contract rights (Burr v. Carvel Dari-Freeze Stores, 21 Misc 2d 877).
Accordingly, judgment is granted plaintiff against defendant, T. V. Development Corp., on the first cause of action in the sum of $2,100 and against defendant T. V. Development Corp., on the second cause of action in the sum of $5,000; judgment is granted defendant, Richard Zatzkin, dismissing the complaint against him as to the third cause of action; and this court declares the plaintiff to be the inventor of the product “ Color-grams ”; he is the sole and exclusive owner of the patent and patent rights, subject to a nonexclusive right of T. V. Development Corp. to practice and use the invention. The requested injunctive relief is denied. The counterclaims are dismissed.