■ ROBERT CORNELL, Appellant, v. T. V. DEVELOPMENT CORP., Respondent, et al., Defendants.— In an action in which plaintiff pleaded and went to trial on four causes of action seeking legal and equitable relief, plaintiff appeals as limited by his brief, from so much of a judgment of the Supreme Court, Nassau County, entered February 5, 1964 upon the court's opinion-decision after a nonjury trial, as awarded to him $5,000 in damages against the defendant T. V. Development Corp. upon the second cause of action for breach of a written contract whereby plaintiff was hired as a vice-president and general manager, at an annual salary of $20,000, with the obligation of disclosing a prior invention and developing it further for the employer's benefit. Judgment, insofar as appealed from, affirmed, without costs. Renewed motion by defendant T. V. Development Corp. to dismiss the appeal on the ground that plaintiff waived his right to appeal by accepting the $5,000, denied. Before adverting to the

issues surviving on the instant limited appeal, it is to be noted that the trial court ruled upon all of the four causes of action tendered by plaintiff. These four causes of action, legal and equitable, are as follows: (a) for breach of contract by defendant T. V. Development Corp. (hereafter referred to as the corporation), to recover as damages the moneys earned up to the date of plaintiff's wrongful discharge by the corporation; (b) for the same breach of contract and wrongful discharge, to recover as damages the plaintiff's prospective salary loss — the subject matter of the present limited appeal; (c) to recover damages for malicious interference with plaintiff's employment contract by the defendant Zatzkin, president of the corporation; and (d) to declare that plaintiff is the sole owner of the said invention, and to permanently restrain the corporation and its two affiliated corporations, Renrac Corp. and Colorgrams, Inc., from further exploitation of said invention. The invention consisted of a graphic method of presenting schematic plans or drawings of electronic instruments, television sets and devices, known as "Colorgrams." After trial the court in its decision (41 Misc 2d 628) held: (1) that plaintiff was concededly entitled to $2,100 in accrued wages on his first cause of action; (2) that he had not been employed by the corporation to invent a particular item, and was therefore justified in refusing to assign his patent rights in and to "Colorgrams", but that, since his invention was furthered on his employer's time and through his employer's assistance, the employer, the corporation, was entitled to an irrevocable license or shop right, on a nonexclusive basis, in and to the patented process; and (3) that he failed to establish that defendant Zatzkin had maliciously interfered with his contract of employment with the corporation. The trial court further held: (4) that plaintiff was the inventor of the product "Colorgrams"; and (5) that he was the sole and exclusive owner of the patent and patent rights thereto, subject to the nonexclusive right of the corporation to practice and use the invention. From the foregoing summary of the results attained after trial of all the issues in this case, it is our opinion that on the equity side of plaintiff's case it was established that the corporation had a substantial interest in the invention which plaintiff had perfected while in its employ. Although the corporation has not, by a cross appeal, sought to challenge the finding that plaintiff had justification for refusing to assign the patent, neither has plaintiff on his appeal impugned the finding that the corporation had "shop rights" in his invention. As a result, the outstanding judgment in this case determines that the corporation has a considerable economic interest in the plaintiff's invention. With respect to the plaintiff's cause of action for wrongful discharge now before us on the instant appeal, the written contract between the parties stated that plaintiff's employment should begin on March 1, 1962 and end on February 28, 1967. The plaintiff was designated to continue as a full-time vice-president and general manager, at an annual salary of $20,000 payable in equal weekly installments. Plaintiff was also given certain fringe benefits. A paragraph in the agreement had reference to the plaintiff's invention and the employer's rights thereto. As stated, such rights were defined and determined by the trial court. From the testimony adduced it appears that the plaintiff was last compensated for his services up to August 23, 1963. He attempted to find new employment but could not secure a new job. The sum of $600, which he received as unemployment insurance, represented his total income from the time he left the corporation's employ to the date of trial. However, as of the date of trial, December 9, 1963, plaintiff was forming his own new corporate venture, although it then had no bank account and plaintiff had not yet drawn money from it. On cross-examination plaintiff denied that his new business venture would be in com-

petition with the corporation (T. V. Development Corp.), but he did admit that his business would be marketing "Colorgrams". In the new corporation being formed, the plaintiff held the office of president and he had issued a press release stating that the new corporation had established an electronics control division and was presently in the research and development stage. It was agreed that plaintiff had organized this new corporation on October 11, 1963. Based on the foregoing testimony the trial court ruled that the plaintiff's entry into a new corporate venture for the purpose of designing, producing and marketing products and components for the electronic industry, had effectively removed him from the employment field and from available employment. Hence, the court limited his recovery of damages to the date when he had formed his new corporation. So limited, the plaintiff was awarded damages to the extent of 13 weeks' salary amounting to $5,000. Plaintiff contends that the damages awarded to him are inadequate and should be increased from $5,000 to $70,384.61. The difference represents the amount of salary accruing after the date plaintiff organized his own business venture. In our opinion, with respect to plaintiff's damage for his wrongful discharge from employment by his employer, the corporation (T. V. Development Corp.), the Trial Justice properly concluded that, as a matter of equity, under the circumstances established here the plaintiff's entry into business on his own account served to limit his damage to the date of his entry upon his own business and thereby relieved his employer from the burden of proving that he could have mitigated or reduced his claimed damage by obtaining other employment. Plaintiff admitted that his new business would deal with his invention. Since by the court's ruling in the equity side of this case, the corporation (the employer) was declared a party with valid vested rights in the invention, the corporation and the plaintiff in his new business became and are now in effect competitors. Therefore, even if we should disregard the contract's no-competition-covenant by plaintiff for a period of three years after the termination of the contract, to now hold enforcible his right to all the salary accruing during the term of the contract, despite his active competition in an effort to stifle the corporation's business, would indeed be oppressive and inequitable. As plaintiff's action was in part cast in equity and was tried on the equity side of the court, equitable principles must dictate the determination of all the issues in the action (cf. *Ferguson* v. *Village of Hamburg,* 272 N. Y. 234, 239). Where an agreement which plaintiff submits as the basis for the relief he seeks is unreasonable or unconscionable, a court of equity will not grant specific performance or its equivalent, but may in its discretion "consider the particular facts of each case and deal with it on its merits" (5 Williston, Contracts [rev. ed.], § 1425, p. 3990; *Martin* v. *Martin,* 5 A D 2d 307, 309; *McGrath* v. *Johnson,* 266 App. Div. 871, affd. 292 N. Y. 647; 81 C. J. S., Specific Performance, § 18, p. 443 *et seq.*; *Campbell Soup Co.* v. *Wentz,* 172 F. 2d 80, 83). By virtue of this doctrine, under the facts and circumstances at bar, the Trial Justice was free to conclude that plaintiff was equitably entitled to damages only up to the date he entered into business on his own, even though on this phase of the case plaintiff's cause of action for damages for wrongful discharge was one at law wherein normally plaintiff's measure of damages was prima facie the entire amount of compensation to accrue during the balance of the term of the employment contract (*Howard* v. *Daly,* 61 N. Y. 362; *Goldman* v. *City Specialty Stores,* 285 App. Div. 880; *Crabtree* v. *Elizabeth Arden Sales Corp.,* 105 N. Y. S. 2d 40, affd. 279 App. Div. 992, affd. 305 N. Y. 48). A court of equity, trying mixed questions of law and equity, "will mold its decrees to suit the needs of the particular case" without distinction as to whether it chooses legal or equit-

able principles as the basis for its determination (*I. H. P. Corp.* v. *210 Cent. Park Corp.*, 16 A D 2d 461, 465, affd. 12 N Y 2d 329, 332–333). In other words. plaintiff should not be allowed to speculate at the expense of the corporation and at the risk of curtailing the corporation's full rightful exploitation of the invention. He would be doing just that if, instead of continuing to seek gainful employment in order to mitigate his damage, he should be permitted to enter upon a new business venture in active competition with the corporation; if he should be given unlimited opportunity to impair its sales, and if he then should still be authorized to collect from it any deficiency which may eventuate between the net profits which he ultimately realizes from his new venture and the salary which he would have received under his original contract from the corporation. Even if it be assumed that plaintiff had every right to thus enter upon his new business venture in active competition with the corporation, nevertheless, by doing so, he has effectively and permanently removed himself from every field of employment; he must be deemed to have made an irrevocable election to forego the damages ordinarily recoverable, and he must be deemed to have accepted the profits of his new venture — whether they be more or less — in lieu of his damages and in full satisfaction thereof. The corporation, which must fend off his competition, should not also be required to stand as his surety against any loss thus voluntarily incurred by him. It is quite inequitable, to say the least, to permit him to take all the possible profits of his competitive venture but to have the corporation bear all his possible losses to the extent of the damages to which he otherwise might have been entitled. Beldock, P. J., Hill and Rabin, JJ., concur; Ughetta, J., concurs in the result; Benjamin, J., concurs in the denial of the motion to dismiss the appeal but dissents and votes to reverse the judgment and to grant a new trial, with the following memorandum: A new trial should be ordered on the sole issue of plaintiff's damages for breach of the contract of employment. The majority does not dispute that plaintiff is the sole, exclusive owner of the patent rights in his invention, and that the corporation has merely a non-exclusive license to use it; that plaintiff properly refused to assign his patent rights to the corporation; and that consequently his discharge because of such refusal was wrongful and unlawful. Nor does the majority deny that a wrongfully discharged employee is entitled prima facie to the agreed salary for the unexpired period of his employment contract, less what he earned or could have earned with reasonable diligence (*Howard* v. *Daly*, 61 N. Y. 362; *Van Wyck* v. *Mannino*, 256 App. Div. 256; *Milage* v. *Woodward*, 186 N. Y. 252; *Crabtree* v. *Elizabeth Arden Sales Corp.*, 105 N. Y. S. 2d 40, affd. 279 App. Div. 992, affd. 305 N. Y. 48); that the employer has the burden of proving what the discharged employee earned or could have earned; and that absent such proof there can be no reduction of damages (*Van Wyck, supra*; *Crabtree, supra*; *Milage, supra*). It is plain on this record that plaintiff tried in vain to find employment after he had been wrongfully discharged; that thereafter, rather than remain idle, he went into business with the intention of using his invention; that to the date of the trial he had earned nothing from his business; and that the corporation offered no proof that plaintiff had earned or could reasonably have earned anything from the date of his wrongful discharge to the date of trial. In the face of these facts and rules of law, the majority of this court is holding that plaintiff's entry into business barred his right to damages accruing after such date; that a covenant against competition, contained in the employment contract, survived plaintiff's wrongful discharge and remained enforcible against him; and that "equity" requires a holding that plaintiff's damages for his wrongful discharge be limited to the period prior to

his entry into business. In my opinion, the majority's holding is neither correct nor equitable. Plaintiff's entry into business, after he had unsuccessfully tried to find other employment, did not disentitle him to damages accruing thereafter; it merely operated to reduce his damages by the amount earned from the business (*Toplitz* v. *Ullman,* 2 Misc. 130; *Crabtree* v. *Elizabeth Arden Sales Corp., supra; Richardson* v. *Hartmann,* 68 Hun 9; *Huntington* v. *Ogdensburgh & Lake Champlain R. R. Co.,* 33 How. Pr. 416). "Any other rule would operate to punish him for his diligence and activity in trying to reduce his damages, and would fix a premium upon indolence" (*Toplitz* v. *Ullman, supra,* p. 131). The contract covenant against competition by plaintiff could not possibly survive his wrongful and unlawful discharge, or be thereafter enforcible against him. To hold that it survives (as the majority is in effect now doing) is inequitable and contrary to law. When plaintiff was unlawfully discharged, the corporation by this wrongful act of its own completely destroyed the consideration for that negative covenant. With respect to that covenant, the result was not only a failure of consideration, but also an agreement that no longer had even the slightest semblance of mutuality. So viewed, the majority holding is obviously contrary to law. More, that holding would allow the wrongdoer to punish the one it wronged; it would allow the one who flagrantly breaks a contract thereafter to enforce it against the one who has honored it; it would allow this corporation to destroy that part of the contract which it does not like and enforce the part which it does like; it would allow this corporation to wrongfully discharge plaintiff and then keep him from trying to earn a living the only way he can; it would punish this plaintiff for trying to earn a living from his own invention (the patent for which he *exclusively* owns) merely because he may thus compete with the corporation — and this despite the fact that the corporation has only a nonexclusive license to use the invention in competition with any one or more firms whom plaintiff may choose to license. So viewed, the majority holding is obviously contrary to legal, equitable and moral principles. On the facts here, cases such as *Purchasing Assoc.* v. *Weitz* (13 N Y 2d 267) and *Amalgamated Ind. Corp.* v. *Teichholtz* (177 App. Div. 456) are not authorities for a holding that the no-competition covenant remains enforcible despite the wrongful discharge of plaintiff. In *Purchasing (supra),* the employee was not wrongfully discharged; he resigned from his job, and the court merely applied the established rule that a "reasonable" negative covenant will be enforced in such a case. In *Amalgamated (supra)* the negative covenant expressly provided that it would remain enforcible after the termination of the contract, no matter how or why the termination occurred; and precisely because of that express provision the court said it was unnecessary to determine how the contract had been terminated. There is no such provision in the contract at bar. The majority is trying to use vague, amorphous, equitable principles as a basis for mitigation of damages in a plain cause of action at law to recover damages for wrongful discharge. And it is doing so despite the fact that no partial or complete defense bottomed upon these equitable principles was ever asserted as a defense to the breach of contract cause of action; and, if it had been, such defense necessarily would have been held insufficient because the negative covenant died when plaintiff was wrongfully discharged. This, the court may not do. The rules as to damages for wrongful discharge are those laid down in the cases cited earlier in this dissenting memorandum. This court may not ignore those rules or emasculate them by an *ad hoc* application of so-called equitable principles which have not and cannot be urged as a basis for reduction of the damages — the damages to which plaintiff is entitled as a matter of law under the cited cases. If it were to become an accepted practice to do what the majority is here doing, no rule of law as to

damages could any longer stand or retain its force and validity. In sum, I believe it is improper and inequitable to apply, either directly or indirectly, the no-competition-covenant in the corporation's favor when it was the corporation itself which wrongfully breached the contract in which the covenant was contained. I believe that covenant did not survive the wrongful discharge of plaintiff and cannot now be indirectly enforced against him. I believe it is improper to limit plaintiff's damages for his wrongful discharge to the period prior to his entry into business. I believe he is entitled to his contract salary for the unexpired period of the contract, less whatever he has so far earned and can reasonably be expected hereafter to earn from his business up to the end of the contract period. For these reasons, I think the judgment should be reversed and a new trial ordered solely on the issue of damages for the wrongful discharge.